**KEN PETROLEUM CORPORATION and Certain Member Companies at the Institute of London Underwriters, et al., Petitioners,**

v.

**QUESTOR DRILLING CORPORATION and Phibro Energy USA, Inc., Respondents.**

**Weber Energy Corporation, Petitioner,**

v.

**Grey Wolf Drilling Company, Respondent.**

Nos. 98–0872, 98–0883.

Supreme Court of Texas.

Argued Dec. 1, 1999.

Decided June 29, 2000.

Rehearing Overruled Oct. 12, 2000.

Christopher L. Evans, Meyer Orlando & Evans, Houston, for Petitioner in No. 98-0872.

Lyle Rathwell, Philip D. Nizialek, Schacht V. McCollum, II, Teresa L. De-Ford, Carla Bennett, Rathwell & Nizialek, The Woodlands, Chester J. Makowski, Royston Rayzor Vickery & Williams, San Antonio, Carrie Ann Pedersen, Houston, for Petitioner in No. 98-0883.

Michael L. Brem, Macey Reasoner Stokes, Baker & Botts, Houston, for Respondent in No. 98-0872.

Tina V. Snelling, Hirsch & Robinson, Houston, C. Mark Stratton, Roger D. Hepworth, Sue Melissa Lee, Henslee Fowler Hepworth & Schwartz, Austin, for Respondent in No. 98-0883.

Justice OWEN delivered the opinion of the Court.

The common issue in these cases is the proper construction of the 1991 version of the Texas Oilfield Anti–Indemnity Act.[1] The drilling contracts in dispute have mutual indemnity provisions under which the drilling contractor agreed to indemnify the operator from claims by the contractor's employees, and the operator in turn agreed to indemnify the contractor for claims by the operator's employees. The trial courts in each case held that the indemnity provisions were void under the TOAIA, and the courts of appeals affirmed. The courts of appeals construed section 127.005 of the TOAIA to require the parties to agree to procure the same dollar amount of insurance to support their respective indemnity obligations and concluded that the contracts at issue did not reflect such an agreement.

▮ We hold that while section 127.005 required that there be a written agreement to procure insurance or self-insurance to support mutual indemnity obligations, such an agreement is not void if the parties agree to provide insurance in differing amounts. Section 127.005(b) only restricted the enforceability of an indemnity obligation to the coverage and dollar limits that applied equally to both parties. We further hold that section 127.005 did not require a written agreement to specify the dollar amounts of insurance to be provided.

With regard to issues in *Ken Petroleum v. Questor* that are not present in *Weber Energy v. Grey Wolf Drilling*, we hold that (1) Questor did not establish as a matter of law that it had no agreement with Ken Petroleum regarding the dollar amount of insurance to be provided, and (2) the subrogation claims brought by Ken Petroleum's insurance underwriters have not been waived. Because of its construction of section 127.005, the court of appeals did not reach the other issues raised by Ken Petroleum and its underwriters regarding the collateral source rule and an alleged guaranty. We therefore remand those issues to the court of appeals.

Accordingly, in *Weber Energy*, we reverse the judgment of the court of appeals and render judgment for Weber Energy. In *Ken Petroleum*, we reverse the judgment of the court of appeals in part and remand the case to that court for further proceedings consistent with this opinion.

## I

### A

Weber Energy was the operator of an oil and gas property and contracted with

---

1. Unless otherwise indicated, this opinion will refer to the Act or the TOAIA as it existed in 1991.

Grey Wolf Drilling Company to drill a well. The parties used an International Association of Drilling Contractors form, which is commonly found in the oil and gas industry. The contract contained mutual indemnity provisions. Grey Wolf agreed to indemnify Weber Energy, for, among other things, all claims and causes of action asserted by Grey Wolf employees for personal injury or death. Weber Energy had a reciprocal indemnity obligation regarding its employees. The contract reflects an agreement that the parties would support their respective indemnity obligations with insurance or self-insurance. Weber Energy and Grey Wolf each had the same amount of insurance, $16,000,000.

A Grey Wolf employee, Wade Williams, was injured during drilling operations and sued Weber Energy. Weber Energy brought a third-party action against Grey Wolf when it refused to honor its indemnity obligation. Weber Energy ultimately settled Williams's claim for $4,000,000 and filed a motion for summary judgment against Grey Wolf seeking recovery of that amount. Grey Wolf filed a cross motion for summary judgment contending that the mutual indemnity agreements were void under the TOAIA. The trial court granted Grey Wolf's motion and denied Weber Energy's.

The court of appeals affirmed. *See* 976 S.W.2d 766. It concluded that even though the parties to the drilling contract actually obtained insurance in equal amounts, the contract did not require them to do so. *See id.* at 768–69. The court of appeals construed the contract to require only Grey Wolf to purchase a specific amount of insurance. *Id.* at 769. Because the court concluded that section 127.005(b) required the parties to agree to obtain insurance in equal amounts, the court held the mutual indemnity provisions were void under the TOAIA. *See id.* We granted Weber Energy's petition for review.

**B**

Ken Petroleum operated various oil and gas properties and contracted with Que-

stor Drilling to drill the Duson # 1 Well. The parties had entered into numerous similar agreements with one another in the past. Those contracts, like the Duson # 1 Well contract, contained mutual indemnity provisions in which Ken Petroleum agreed to indemnify Questor for injuries to or the death of Ken Petroleum employees, and Questor agreed to indemnify Ken Petroleum for injuries to or the death of Questor employees. The parties agreed to support their respective indemnity obligations with insurance, self-insurance, or a combination of both. It is undisputed that Ken Petroleum had $6,000,000 in insurance available to support its indemnity obligation to Questor. It is also undisputed that Questor's parent company Phibro Energy sent Ken Petroleum a copy of a certificate of insurance reflecting a self-insured retention of $2,000,000 and a $1,000,000 liability policy in excess of that retention for Questor. The parties disagree about whether this certificate is incorporated by reference in the Duson # 1 contract, but there is no dispute that Questor did in fact have $3,000,000 in combined self-insurance and insurance available to support its contractual indemnity obligation to Ken Petroleum.

An employee of Questor, Karl Hemphill, was killed during the drilling of the Duson # 1. His survivors sued Questor and Ken Petroleum. Ken Petroleum filed a cross-claim against Questor when it refused to provide indemnity. Questor and Ken Petroleum settled the *Hemphill* suit, stipulating that the settlement was reasonable and that all of Ken Petroleum's claims against Questor and Phibro were preserved. Ken Petroleum's share of the settlement was $500,000. It paid $5,000 (its insurance deductible), and the balance was paid by its insurance underwriters. The Underwriters and Ken Petroleum then brought a new suit against Questor and Phibro for $500,000 plus $160,000 in defense costs, alleging breach of the indemnity agreement, breach of guaranty based on the

certificate of insurance, and DTPA violations. Questor and Phibro filed a motion for summary judgment contending that (1) the indemnity provision was void under the TOAIA, (2) Ken Petroleum's underwriters had waived their subrogation rights against Questor, (3) Questor was entitled to an offset for the $495,000 paid by the Underwriters, and (4) there was no DTPA violation as a matter of law. The trial court granted summary judgment for Questor and Phibro.

On appeal, the court of appeals held that the indemnity agreement was void, and that the Underwriters had waived their subrogation rights. *See* 976 S.W.2d at 289, 291. The court concluded, however, that Ken Petroleum's DTPA claims were viable and remanded them to the trial court. *See id.* at 289–900. Having reached the foregoing conclusions, the court of appeals did not reach the issues of whether the collateral source rule applied or whether Questor was entitled to an offset. *See id.* at 291.

We granted Ken Petroleum's petition for review and Questor's and Phibro's conditional petition for review, and consolidated that case with *Weber Energy* for oral argument.

**II**

Our beginning point is the Texas Oilfield Anti–Indemnity Act and its purposes. The Act was promulgated in 1973 [2] and later codified as chapter 127 of the Texas Civil Practice and Remedies Code.[3] The Legislature found that "an inequity is fostered on certain contractors by the indemnity provisions in certain agreements pertaining to wells for oil, gas, or water or to

mines for other minerals." TEX. CIV. PRAC. & REM.CODE 127.002(a).[4] The legislative history indicates that in 1973, drilling and other contractors had agreed to indemnify operators but were unable to obtain insurance at a reasonable cost or in some cases to obtain any insurance at all to cover liability that might be incurred from the indemnity obligations. Contractors were thus subjected to significant liability with no feasible means of insuring against those obligations. The Legislature accordingly declared "[c]ertain agreements that provide for indemnification of a negligent indemnitee are against the public policy of this state." *Id.* at 127.002(b).[5] Specifically, section 127.003 provides:

**§ 127.003. Agreement Void and Unenforceable**

(a) Except as otherwise provided by this chapter, a covenant, promise, agreement, or understanding contained in, collateral to, or affecting an agreement pertaining to a well for oil, gas, or water or to a mine for a mineral is void if it purports to indemnify a person against loss or liability for damage that:

(1) is caused by or results from the sole or concurrent negligence of the indemnitee, his agent or employee, or an individual contractor directly responsible to the indemnitee; and

(2) arises from:

(A) personal injury or death;

(B) property injury; or

(C) any other loss, damage, or expense that arises from personal

---

2. *See* Act of May 19, 1973, 63rd Leg., R.S., ch. 646 §§ 1–6, 1973 Tex. Gen. Laws 1767–68.

3. *See* Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex. Gen. Laws 3319–20 (amended 1989, 1991, 1995, 1999) (current version at TEX. CIV. PRAC. & REM.CODE §§ 127.001–007).

4. The Act provided in 1973 that "an inequity is fostered on certain contractors by the in-

demnity provisions contained in some agreements pertaining to wells for oil, gas or water or mines for other minerals." Act of May 19, 1973, 63rd Leg., R.S., ch. 646 § 1, 1973 Tex. Gen. Laws 1767 (amended 1985, 1991).

5. The 1973 version said that the Legislature found "certain agreements where there is negligence attributed to the indemnitee to be against the public policy of the State." *Id.*

injury, death, or property injury.

TEX. CIV. PRAC. & REM.CODE § 127.003.[6]

Under the Act as originally promulgated, there was an exemption if the parties had agreed in writing that the indemnity obligation would be supported by available liability coverage not to exceed certain dollar limits calculated with reference to the state's basic limits for personal injury established by the former State Board of Insurance under the Insurance Code.[7] Thus, not all indemnity agreements in the oil, gas, and mineral exploration industry were void.

In 1989, the Legislature amended the Act in response to requests by contractors and operators alike. Liability insurance had become readily available to contractors to support contractual indemnity agreements,[8] and the amendments were intended to make the Act less restrictive. The amendments differentiated between mutual and unilateral indemnity agreements.[9] The amendments placed no cap on the amount of insurance that could be required by mutual indemnity obligations and increased the monetary cap on the amount of insurance that could be required by a unilateral indemnity agreement to $500,000.[10]

The 1989 exemption for mutual indemnity agreements remained unchanged by the 1991 amendments to the Act[11] for purposes of the issues in the cases before us

today. There have been further amendments to the Act in 1995 and 1999,[12] but because they took effect after the personal injuries at issue in these cases occurred, we do not consider them. Although both courts of appeals quoted the 1995 version of the Act, the parties agree and we hold that it is the 1991 version that governs the indemnification controversies under the Weber Energy and Ken Petroleum contracts.

■ The exemptions for mutual and unilateral indemnity agreements as they appeared in the 1991 version of the Act said that the Act did not apply to

(a) ... an agreement that provides for indemnity if the parties agree in writing that the indemnity obligation will be supported by liability insurance coverage to be furnished by the indemnitor subject to the limitations specified in Subsection (b) or (c).

(b) With regard to a mutual indemnity obligation, the indemnity obligation is limited to the extent of the coverage and dollar limits of insurance or qualified self-insurance each party as indemnitor has agreed to provide in equal amounts to the other party as indemnitee.

(c) With respect to a unilateral indemnity obligation, the amount of insurance required may not exceed $500,000.

Former TEX. CIV. PRAC. & REM.CODE § 127.005.[13]

---

**6.** The 1973 iteration of this provision is substantially the same. *See id.* at § 2.

**7.** *See* Act of May 19, 1973, R.S., 63rd Leg., ch. 646 § 4(c), 1973 Tex. Gen. Laws 1767–68 (amended 1985, 1989, 1991, 1995, 1999) (current version at TEX CIV. PRAC. & REM.CODE § 127.005).

**8.** *See* Hearings on S.B. 1084 Before the Senate Comm. on Jurisprudence, 71st Leg., R.S. (March 28, 1989) (transcript available from Senate Staff Services Office) (statement of Senator Bob McFarland).

**9.** *See* Act of May 27, 1989, 71st Leg., R.S., ch. 1102, § 3, 1989 Tex. Gen. Laws 4557–58 (amended 1991, 1995, 1999) (current version at TEX. CIV. PRAC. & REM.CODE § 127.005).

**10.** *See id.*

**11.** *See* Act of April 9, 1991, 72nd Leg., R.S., ch. 36, § 3, 1991 Tex. Gen. Laws 430–31 (amended 1995, 1999) (current version at TEX. CIV. PRAC. & REM.CODE § 127.005).

**12.** *See* Act of May 27, 1995, 74th Leg., R.S., ch. 679, § 1, 1995 Tex. Gen. Laws 3655, *amended by* Act of May 26, 1999, 76th Leg., R.S., ch. 1006, § 1, 1999 Tex. Gen. Laws 3791.

**13.** *See* Act of May 27, 1989, 71st Leg., R.S., ch. 1102, § 3, 1989 Tex. Gen. Laws 4557–58, *amended by* Act of April 9, 1991, 72nd Leg., R.S., ch. 36, § 3, 1991 Tex. Gen. Laws 430, 431 (amended 1995, 1991, 1999) (current version at TEX. CIV. PRAC. & REM.CODE § 127.005).

The court of appeals in *Ken Petroleum* construed subsection (b) to require the parties to "agree on equal amounts of liability insurance coverage that will be used to indemnify the other," although that court was of the view that section 127.005(b) did not require the dollar amount of insurance to be stated in the contract. 976 S.W.2d at 287. The court of appeals in *Ken Petroleum* relied in part on the Fifth Circuit's decision in *Greene's Pressure Testing & Rentals, Inc. v. Flournoy Drilling Co.*, 113 F.3d 47 (5th Cir. 1997), which had held that there must be an agreement between the parties to provide equal amounts of insurance and that voluntary procurement of insurance would not suffice. *See id.* at 288–89. The court of appeals in *Weber Energy* reached a similar conclusion, expressly "adopt[ing] the rationale"[14] of *Greene's*. 976 S.W.2d at 769.

We disagree with the construction given to section 127.005(b) by our courts of appeals in these cases. As pointed out by the concurring opinion in *Weber Energy,* such a construction does not comport with legislative intent. *See* 976 S.W.2d at 770 (Cohen, J., concurring). In determining legislative intent, the Legislature has instructed that we may consider, among other things, the object the Legislature sought to obtain, the circumstances under which the statute was enacted, legislative history, and the consequences of a particular construction. *See* Code Construction Act, TEX. GOV'T CODE § 311.023; *see also Fleming Foods of Texas, Inc. v. Rylander,* 6 S.W.3d 278, 283 (Tex.1999); *Phillips v. Beaber,* 995 S.W.2d 655, 658 (Tex.1999).

The meaning of section 127.005(b) is not as clear as it might have been. But we conclude that it does not require parties to a mutual indemnity agreement to agree to have insurance in the same dollar amount. Instead, it contemplates that the mutual indemnity obligations will be enforceable only up to "the extent of the coverage and dollar limits of insurance or qualified self-insurance each party as indemnitor has agreed to provide in equal amounts to the other party as indemnitee." TEX. CIV. PRAC. & REM.CODE § 127.005(b). In other words, "the indemnity obligation is limited" to the amount of insurance that is equally provided. If one party provides more insurance than the other, the party providing the higher amount of coverage may not enforce its right to indemnity beyond the amount of coverage that the other party agreed to provide. And the party providing the lower amount of insurance may not enforce its right to indemnity beyond its own amount of coverage.

This construction is supported by the purposes of the Act, its history, and the consequences that would flow from the court of appeals' construction. The Act was intended to prevent overreaching by one party vis a vis another. But it was also unmistakably intended to allow parties to oil-field contracts to mutually indemnify one another to the extent that there is in fact mutuality of obligation. Requiring the dollar limits of insurance obtained to be equal adds a requirement that was not intended by the Legislature and that is not mandated by the text of the Act.

The courts of appeals' construction of the Act fails to consider the practicalities of obtaining insurance. Contractors and operators may choose, as Weber Energy, Grey Wolf, and Ken Petroleum chose, to purchase blanket insurance policies and umbrella policies that will provide coverage for a multitude of contracts. And, like Weber Energy, Grey Wolf, and Questor, one or both parties to an oil-field contract may have liability insurance policies already in place to support contractual indemnity obligations months before a particular contract is negotiated. It is unreasonable to conclude that the Legislature intended to void in its entirety an indemnity provision simply because one party agreed to maintain or procure a

---

14. 976 S.W.2d at 769.

higher or lower amount of insurance than the other had in place or agreed to provide.

The fact that the Legislature expressly made section 127.005 applicable not only to contracts executed after the 1989 amendments but to all indemnity obligations "without regard to whether the obligation was entered into before, on, or after the effective date of this Act," [15] underscores the damage that would be done to the oilfield industry by severely restricting the ability of parties to agree upon mutual indemnity provisions. Under the courts of appeals' construction, the Act would void all mutual indemnity agreements when both parties agreed to provide and in fact did provide insurance but in differing amounts.

It would also create an anomaly to construe section 127.005 as voiding mutual indemnity obligations if one party agreed to provide more insurance than the other. Section 127.005(c) expressly blesses a *unilateral* indemnity obligation as long as the amount of insurance required to support it does not exceed $500,000. *See* Tex. Civ. Prac. & Rem.Code § 127.005. It simply makes no sense to say that the Legislature demanded in section 127.005(b) that insurance obligations must be precisely equal when it gives effect to unilateral indemnitee obligations in which only one party provides insurance.

Accordingly, we hold that section 127.005 requires parties to a mutual indemnity agreement to "agree in writing that the indemnity obligation will be supported by liability insurance coverage." Tex. Civ. Prac. & Rem.Code § 127.005(a). When the parties agree to provide differing amounts of coverage, the mutual indemnity obligations are limited to the lower amount of insurance. The amount of coverage each party agrees to provide need not be specified in the agreement that contains the indemnity agreement. *See id.* Indeed, the statute does not require that an agreement regarding the amount of insurance be in writing. *See id.* The statute requires a writing to memorialize only that "each party as indemnitor has agreed to provide" insurance or self-insurance to support the indemnity obligations. *See* Tex. Civ. Prac. & Rem Code § 127.005(b).

We turn to an examination of the two contracts at issue in light of the requirements of the Act.

### III

We first consider the contract between Weber Energy and Grey Wolf. Grey Wolf agreed to indemnify Weber Energy for, among other things, injuries to Grey Wolf's employees, and the parties agreed that the indemnity obligation would be supported by "available liability insurance . . . or voluntarily self-insured." [16] Similarly, Weber Energy agreed to indemnify

15. Act of May 27, 1989, 71st Leg., R.S., ch. 1102, § 4, 1989 Tex. Gen. Laws 4557, 4559.

16. The drilling contract provides in section 18.10:

18.10 Contractor's Indemnification of Operator: Contractor agrees to protect, defend, indemnify, and save Operator, its officers, directors, employees, and joint owners harmless from and against all claims, demands, and causes of action of every kind and character, without limit and without regard to the cause or causes thereof or the negligence of any party or parties, arising in connection herewith in favor of Contractor's employees or Contractor's subcontractors or their employees, or Contractor's invitees, on account of bodily injury, death or damage to property. If it is judicially determined that the monetary limits of insurance required hereunder or of the indemnities voluntarily and mutually assumed under paragraph 18.10 (which Contractor and Operator hereby agree will be supported either by available liability insurance, under which the insurer has no right of subrogation against the indemnitees, or voluntarily self-insured, in part or whole) exceed the maximum limits permitted under applicable law, it is agreed that said insurance requirements or indemnities shall automatically be amended to conform to the maximum monetary limits permitted under such law.

Grey Wolf for injuries to Weber Energy employees and to support that the indemnity obligation "with available insurance ... or voluntarily self-insured." [17] Another section of the drilling contract also requires Grey Wolf to maintain insurance and refers to Exhibit "A." [18] Exhibit "A" requires Grey Wolf to have insurance applicable to the indemnity obligation totaling $16,000,000. The drilling contract did not contain a similar provision regarding the amount of insurance that Weber Energy was obligated to maintain or procure, but Weber Energy did in fact have $16,000,000 of coverage in support of its indemnity obligation.

■ Grey Wolf argues that the contract does not require Weber Energy to purchase or provide any particular amount of insurance, and therefore, that Grey Wolf's own indemnity obligation is void. We disagree. First, the contract unequivocally requires Weber Energy to provide insurance. Both sections 18.10 and 18.11 of the agreement refer to the "indemnities voluntarily and mutually assumed," and the parties agreed in those same sections that their mutual indemnity obligations would be supported by insurance. Section 16 of the contract also reflects the parties' intent that Weber Energy would maintain insurance to support its liabilities under the agreement: "Operator will, as well, cause its insurer to waive subrogation against Contractor for liability it assumes."

Second, under the express provisions of the contract, without the overlay of section 127.005 of the TOAIA, Weber Energy's indemnity obligation to Grey Wolf and its corresponding insurance obligation is not limited by a dollar amount. Weber Energy agreed to hold Grey Wolf "harmless from and against all claims, demands, and causes of action of every kind and character." And Weber Energy's obligation to provide insurance or self-insurance to support its indemnity obligation is not capped by a dollar amount as is Grey Wolf's.

---

**17.** Section 18.11 of the drilling contract provides:

> 18.11 Operator's Indemnification of Contractors [sic]: Operator agrees to protect, defend, indemnify, and save Contractor, its officers, directors, employees, and joint owners harmless from and against all claims, demands, and causes of action of every kind and character, without limit and without regard to the cause or causes thereof or the negligence of any party or parties, arising in connection herewith in favor of Operator's employees or Operator's contractors or their employees or Operator's invitees other than those parties identified in paragraph 18.10 on account of bodily injury, death or damage to property. *Operator's indemnity shall be without regard to and without any right to contribution from any insurance maintained by Contractor pursuant to paragraph 16.* If it is judicially determined that the monetary limits of insurance required hereunder or of the indemnities voluntarily and mutually assumed under Paragraph 18.11 (which Contractor and Operator hereby agree will be supported either by available liability insurance, under which the insurer has no right of subrogation against the indemnitee, or voluntarily self-insured, in part or whole) exceed the maximum limits permitted under applicable law, it is agreed that said

insurance requirements or indemnities shall automatically be amended to conform to the maximum monetary limits permitted under such law. (Emphasis in original)

**18.** Section 16 of the contract provides:

> 16. INSURANCE:
> During the life of this Contract, Contractor shall at Contractor's expense maintain, with an insurance company or companies authorized to do business in the state where the work is to be performed and satisfactory to Operator, insurance coverages of the kind and in the amounts set forth in Exhibit "A" *insuring the liabilities specifically assumed by Contractor in Paragraph 18 of this Contract.* Contractor shall, if requested to do so by Operator, procure from the company or companies writing said insurance a certificate or certificates satisfactory to Operator that said insurance is in full force and effect and that the same shall not be cancelled or materially changed without ten (10) days prior written notice to Operator. For liabilities assumed hereunder by Contractor, its insurance shall be endorsed to provide that the underwriters waive their right of subrogation against Operator. Operator will, as well, cause its insurer to waive subrogation against Contractor for liability it assumes. (Emphasis in original)

Weber Energy agreed that its indemnity obligation "will be supported either by available liability insurance ... or voluntarily self-insured." Accordingly, Weber Energy *contractually* agreed to *fully* insure or self-insure its indemnity obligation. The only limit on that obligation comes not from the contract but from the TOAIA. Weber Energy's indemnity obligation is statutorily limited to $16,000,000, the amount of insurance that Grey Wolf agreed to provide. Thus, Weber Energy had an enforceable contractual obligation to provide insurance in the same amount that Grey Wolf agreed to provide.

Finally, even if the contract could not be construed to require Weber Energy to provide a certain amount of insurance, Grey Wolf should not be heard to assert that the mutual indemnity obligations are entirely void. Grey Wolf's own indemnity obligations are expressly spelled out under the agreement. The only uncertainty under Grey Wolf's construction of the contract is the extent of Weber Energy's insurance obligation. But it was for Grey Wolf's protection that Weber Energy's indemnity agreement and corresponding insurance obligations were included in the contract. Likewise, section 127.005 of the Civil Practice and Remedies Code is for Grey Wolf's protection. Under section 127.005, the dollar limit of Grey Wolf's own

indemnity obligation could not be greater than Weber Energy's insurance obligation. If Weber Energy provided insurance in an amount lower than the amount Grey Wolf agreed to provide, then Grey Wolf's liability would be enforceable only up to that lower amount. Grey Wolf was in a position at the time the contract was executed to determine the amount of insurance that Weber Energy would provide. Weber Energy did in fact support its indemnity obligation with $16,000,000 in insurance. Grey Wolf cannot now claim that its own indemnity obligation is void.

The trial court erred in granting Grey Wolf's motion for summary judgment and in denying Weber Energy' motion for summary judgment. The indemnity obligations are not void under section 127.005. We now turn to the contract between Ken Petroleum and Questor.

### IV

■ Ken Petroleum is the operator and Questor is the contractor under a drilling contract that was drawn on an International Association of Drilling Contractors form that differed in some respects from the form contract at issue in *Weber Energy*. However, the mutual indemnity provisions in that contract are virtually identical to those found in the *Weber Energy* contract.[19] Those provisions, like the ones in

---

**19.** Ken Petroleum agreed to indemnify Questor and to provide insurance:

> 14.9 Operator's Indemnification of Contractors [sic]: Operator [Ken Petroleum] agrees to protect, defend, indemnify, and save Contractor [Questor], its officers, directors, employees, and joint owners harmless from and against all claims, demands, and causes of action of every kind and character, without limit and without regard to the cause or causes thereof or the negligence of any party or parties, arising in connection herewith in favor of Operator's employees or Operator's contractors or their employees or Operator's invitees other than those parties identified in paragraph 14.9 on account of bodily injury, death or damage to property. If it is judicially determined that the monetary limits of insurance required hereunder or of the indemnities voluntarily and mutually assumed under

Paragraph 14.8 (which Contractor and Operator hereby agree will be supported either by available liability insurance, under which the insurer has no right of subrogation against the indemnitee, or voluntarily self-insured, in part or whole) exceed the maximum limits permitted under applicable law, it is agreed that said insurance requirements or indemnities shall automatically be amended to conform to the maximum monetary limits permitted under such law.

Questor agreed to indemnify Ken Petroleum and to provide insurance:

> 14.8 Contractor's Indemnification of Operator: Contractor [Questor] agrees to protect, defend, indemnify, and save Operator [KEN], its officers, directors, employees and joint Owners harmless from and against all claims, demands, and causes of action of every kind and character, without

*Weber Energy,* contemplate that the operator (Ken Petroleum) will provide insurance in at least the same amount as the contractor (Questor). Ken Petroleum provided $6,000,000 in insurance. There is a dispute, however, about the amount of insurance that Questor agreed to provide. The contract says that Questor is obligated to provide insurance in the "kind and amounts" set forth in Exhibit "A":

13. INSURANCE

During the life of this Contract, Contractor shall at Contractor's expense maintain, with an insurance company or companies authorized to do business in the state where the work is to be performed or through a self-insurance program, insurance coverages of the kind and in the amounts set forth in Exhibit "A". Contractor shall, if requested to do so by Operator, procure from the company or companies writing said insurance a certificate or certificates that said insurance is in full force and effect and that the same shall not be cancelled or materially changed without ten (10) days prior written notice to Operator. For liabilities assumed hereunder by Contractor, its insurance shall be endorsed to provide that the underwriters waive their right of subrogation against Operator. Operator will, as well, cause its insurer to waive subrogation against Contractor for liability it assumes.

Exhibit "A" in turn says "CERTIFICATE ON FILE" in the section entitled "INSURANCE (See Par. 13)." Before negotiation of this particular contract began, Questor's parent company, Phibro, sent Ken Petroleum a certificate of insurance reflecting insurance and self-insurance for

Questor in the total amount of $3,000,000. The dispute is whether that certificate of insurance is referenced by "CERTIFICATE ON FILE" in Exhibit "A" to the contract.

An account of the contract negotiations is reflected in the summary judgment evidence. Prior to executing this particular contract, Ken Petroleum and Questor had entered into several drilling contracts with each other that were very similar. Three months before negotiations of the contract involved in this suit began, Ken Petroleum asked Questor how much insurance it had. Ken Petroleum was told that the amount was $1,000,000. Ken Petroleum then said that it wanted more details, and Questor said that it would send a certificate of insurance. Phibro, Questor's parent company, did in fact send a letter to Ken Petroleum with a certificate of insurance enclosed. The certificate reflected that Phibro maintained $3,000,000 in combined self-insurance and liability insurance for Questor. The contract at issue was negotiated and executed about three months later with no further communication regarding insurance.

Ken Petroleum contends that the facts establish as a matter of law that the parties intended the reference in their contract to "CERTIFICATE ON FILE" to be to the certificate of insurance that Phibro sent to Ken Petroleum. In the alternative, Ken Petroleum contends that there is a fact question as to whether there was an agreement that Questor would have a specific amount of insurance. Ken Petroleum argues that in either event the trial court erred in granting summary judgment for

limit and without regard to the cause or causes thereof or the negligence of any party or parties, arising in connection herewith in favor of Contractor's employees or Contractor's subcontractors or their employees, or Contractor's invitees, on account of bodily injury, death, or damage to property. If it is judicially determined that the monetary limits of insurance required hereunder or of the indemnities voluntarily and mutually assumed under paragraph 14.8 (which Contractor and Operator hereby agree will be supported either by available liability insurance, under which the insurer has no right of subrogation against the indemnitees, or voluntarily self-insured, in part or whole) exceed the maximum limits permitted under applicable law, it is agreed that said insurance requirements or indemnities shall automatically be amended to conform to the maximum monetary limits permitted under such law.

Questor on its contractual indemnity. We agree. Questor did not establish as a matter of law that Exhibit "A" does not refer to the certificate of insurance that Phibro provided or that there was no agreement regarding the amount of insurance or self-insurance that Questor would procure or had available. If the contract does refer to the certificate, then Questor's indemnity obligation to Ken Petroleum is enforceable up to the $3,000,000 of combined self-insurance and liability insurance reflected in that certificate for the reasons we considered above regarding the Weber Energy contract. To summarize, the contract reflects that Ken Petroleum agreed to provide insurance in at least the same amount as Questor and in fact provided more insurance that Questor. Therefore, if Questor agreed to provide a specified amount of insurance, Questor's indemnity obligation would be enforceable up to that amount.

### V

■ Questor's and Phibro's motion for summary judgment also dealt with the rights and obligations of Ken Petroleum's insurance underwriters. As indicated earlier in this opinion, the Underwriters funded $495,000 of a $500,000 settlement payment on behalf of Ken Petroleum to the family of Questor's employee who was killed on the Duson # 1 drilling job.

Questor contends that as the subrogees of Ken Petroleum, the Underwriters expressly waived their right to sue it to enforce the indemnity agreement. First, Questor argues that the following provision in the drilling contract precludes the Underwriters from enforcing Questor's indemnity agreement:

13. Insurance: ... For liabilities assumed hereunder by contractor [Questor], its insurance shall be endorsed to provide that the underwriters waive their right of subrogation against Operator. Operator [Ken Petroleum] will, as well, cause its insurer to waive subroga-

tion against Contractor for liability it assumes.

Questor's contentions are not well-founded. Ken Petroleum agreed to cause its underwriters to waive their subrogation rights only as to amounts Ken Petroleum might have to pay under its agreement to indemnify Questor. Ken Petroleum did not agree to indemnify Questor for injuries to or the death of Questor's employees. To the contrary, Questor agreed that it would indemnify Ken Petroleum if a Questor employee were injured or killed. The foregoing provision did not waive the rights of the Underwriters to enforce, as subrogees, the indemnity obligations Questor owed to Ken Petroleum.

Questor next points to an endorsement to Ken Petroleum's policy with the Underwriters entitled "WAIVER OF SUBROGATION WHEN REQUIRED BY CONTRACT" which says:

It is agreed that, with respect to such insurance as is afforded by this Cover Note, the company waives any right of subrogation against the "principal" named below by reason of any payment made on account of injury, including death resulting therefrom or on account of property damage sustained by any person or entity while the assured is engaged in any of the operations described in the Schedule of this Cover Note.

"Principal" means any party to whom the named assured is contractually obligated to waive its legal rights of indemnification.

Questor is not a party to the contract of insurance between Ken Petroleum and its Underwriters. Questor must look to its own contract with Ken Petroleum to determine what subrogation rights it may insist that Ken Petroleum require its insurers to waive. Sections 13 and 14.9 of the drilling contract require Ken Petroleum to cause its insurers to waive their subrogation rights only with regard to Ken Petroleum's agreement to indemnify Questor for the death of or injury to Ken Petroleum em-

ployees and certain others. The drilling contract does not require Ken Petroleum to cause its insurers to waive subrogation rights when they pay amounts that Questor should have paid under its agreement to indemnify Ken Petroleum. If Ken Petroleum is not contractually obligated to Questor to enforce a waiver of subrogation, Questor cannot insist that Ken Petroleum assert a waiver of subrogation when Ken Petroleum and the Underwriters both agree that the Underwriters stepped into Ken Petroleum's shoes by paying $450,000 to settle the *Hemphill* litigation. Questor is not subject to conflicting claims from Ken Petroleum and its insurers. Questor owes indemnity obligations to Ken Petroleum, its subrogees, or both, if the indemnity agreement is enforceable under the TOAIA. There is no dispute between Ken Petroleum and the Underwriters about how they will divide the amounts owed by Questor under the indemnity agreement.

Finally, Questor points to the "Conditions" section in Ken Petroleum's policy with its underwriters, which provides under the heading "SUBROGATION":

> The company hereby agrees to waive such rights of recovery against any principal provided such waiver has been included in a written contract executed by the named assured and the claim for damages arises out of specific operations performed for such principal by or on behalf of the named assured.

For the reasons just discussed, Questor is not entitled to rely on this provision when Ken Petroleum and its underwriters have no dispute between themselves as to subrogation rights and Questor does not have a contractual right to insist that Ken Petroleum cause its insurers to waive indemnity rights. The trial court erred in granting summary judgment for Questor and Phibro with regard to the Underwriters' claims.

## VI

As already indicated, Ken Petroleum sued not only Questor, but its parent company Phibro. The claims against Phibro are based on the certificate of insurance that it sent to Ken Petroleum prior to the execution of the Duson # 1 contract. The court of appeals did not reach these claims because it concluded that the mutual indemnity agreements were void and unenforceable. For the reasons considered above, the court of appeals erred in rendering judgment that the agreement was void. We accordingly remand the summary judgment issues regarding Phibro's liability under the certificate of insurance to the court of appeals for further disposition in light of our holdings.

## VII

Thus far, we have considered the issues Ken Petroleum has raised in this Court. Questor and Phibro also filed a conditional petition for review regarding Ken Petroleum's DTPA claim. Ken Petroleum maintains that if Questor's indemnity obligation is void, there has been a DTPA violation. The trial court disagreed and granted summary judgment for Questor and Phibro foreclosing both the contractual indemnity and the DTPA claims. The court of appeals reversed the trial court's summary judgment as to the DTPA claim. *See* 976 S.W.2d at 289–90.

Questor's and Phibro's motion for summary on the DTPA claim was based on two grounds: (1) that, like *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12 (Tex.1996), this is in essence a breach of contract case for which there is no DTPA cause of action, and (2) that there was no intentional misrepresentation. The court of appeals recognized that a breach of contract would not generally constitute a violation of the DTPA, citing *Crawford v. Ace Sign*, 917 S.W.2d at 14. *See* 976 S.W.2d at 289. But the court reasoned that since the contractual indemnity provision Ken Petroleum sought to enforce was void as a matter of law, there could be no breach of contract and that *Crawford* was therefore inapposite. *See id.* The court of appeals further concluded that intent is not an element of

a cause of action for the laundry list violation of "representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law." *Id.* at 289–90 (citing TEX. BUS. & COM.CODE § 17.46(b)(12)).

We agree with the court of appeals that the rationale of *Crawford v. Ace Sign* would not automatically foreclose a DTPA cause of action when a contract or a part thereof is void by operation of law. But a contract is a mutual undertaking. An aspect of an agreement that proves unenforceable because it is against public policy does not, standing alone, constitute a violation of section 17.46(b)(12). There must be something more. *Cf. Best v. Ryan Auto Group, Inc.,* 786 S.W.2d 670, 671–72 (Tex.1990) (holding that evidence of representations outside the contract was legally sufficient evidence to support a section 17.46(b)(12) claim). There must be a representation "that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law." TEX. BUS. & COM.CODE § 17.46(b)(12). In this case, Ken Petroleum did not present any summary judgment evidence that Questor made representations about the indemnity obligations. The indemnity provisions themselves are only agreements that Ken Petroleum will indemnify Questor and that Questor will indemnify Ken Petroleum. They are not representations withing the meaning of section 17.46(b)(12) of the DTPA. The trial court correctly granted summary judgment for Questor on the DTPA claim against it. The court of appeals accordingly erred in reversing summary judgment for Questor on that claim.

However, Ken Petroleum also asserted DTPA claims against Phibro based on the certificate of insurance that it sent to Ken Petroleum in response to an inquiry about the amount of insurance that Questor had. The motion for summary judgment did not address that claim, and the trial court therefore erred in granting summary judgment as to Phibro. *See Stiles v. Resolution Trust Corp.,* 867 S.W.2d 24, 26 (Tex. 1993)

* * * * *

In *Weber Energy,* we reverse the judgment of the court of appeals and render judgment for Weber Energy. In *Ken Petroleum,* we reverse the judgment of the court of appeals in part, and remand that case to the court of appeals for further disposition.