In The

Court of Appeals

For The

First District of Texas

____________


NO. 01-00-00586-CV

____________


RANGER INSURANCE COMPANY AND SWIFT ENERGY COMPANY,
Appellants


V.


AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE
COMPANY, FLOURNOY PRODUCTION COMPANY, AND FLOURNOY
DRILLING COMPANY, Appellees






On Appeal from the 234th District Court

Harris County, Texas

Trial Court Cause No. 99-06541






O P I N I O N This case involves indemnity and insurance claims arising out of oilfield
litigation. Plaintiffs/appellants, Ranger Insurance Company ("Ranger") and Swift
Energy Company ("Swift"), filed a declaratory judgment action to recover money
paid in settlement for personal injury claims. The trial court rendered summary
judgment for defendants/appellees, American International Specialty Lines Insurance
Company ("AISLIC"), Flournoy Production Company, and Flournoy Drilling
Company ("Flournoy"). We reverse and remand.

Background

 Plaintiffs/appellants are Swift, the well operator of an oil and gas property, and
its insurer, Ranger. Defendants/appellees are Flournoy, the drilling contractor, and
its insurer, AISLIC. Swift and Flournoy entered into an oil and gas well drilling
contract dated March 21, 1996. The contract contained mutual indemnity provisions
to protect each against suits by the other's employees. Flournoy (the contractor)
agreed to indemnify Swift (the operator) for claims by Flournoy's employees. In turn,
Swift agreed to indemnify Flournoy for claims by Swift's employees. 

 On June 23, 1996, a blowout occurred at the well site. Two Flournoy
employees, Craig Claus and Tommy Rackowitz, were injured. They were barred from
suing Flournoy, their employer, because of workers' compensation; therefore, they
sued only Swift. On December 3, 1997, Swift and its insurance carriers paid $2.7
million to settle the Claus litigation. Shortly thereafter, Swift and its insurance
carriers paid $2.3 million to settle the Rackowitz litigation. 

 Swift and Ranger (as Swift's subrogee) filed a declaratory judgment action
against Flournoy and its carriers to recover the reasonable and necessary costs of
defense and indemnity associated with the Claus and Rackowitz litigation. The trial
court rendered summary judgment for appellees, Flournoy and AISLIC, holding that
the indemnity provisions were void under the Texas Oilfield Anti-Indemnity Act. 
Swift and Ranger appeal.

Standard of Review

 To prevail on a motion for summary judgment, a defendant must establish that
no material fact issue exists and that it is entitled to judgment as a matter of law. See
Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 222 (Tex. 1999). A defendant who
moves for summary judgment on the basis of an affirmative defense has the burden
to prove conclusively all the elements of the affirmative defense as a matter of law. 
See KPMG Peat Marwick v. Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748
(Tex. 1999). In conducting our review of the summary judgment, we take as true all
evidence favorable to the nonmovant, and we make all reasonable inferences in the
nonmovant's favor. Id. 

Texas Oilfield Anti-Indemnity Act

 This case requires an interpretation of the 1995 version of the Texas Oilfield
Anti-Indemnity Act (the 1995 Act). (1) Under the 1995 Act, certain agreements between
operators and drillers providing for indemnification of a negligent indemnitee are
against public policy. 1995 Act § 127.002(b). The legislative history indicates that
in 1973, drilling and other contractors had agreed to indemnify operators, but were
unable to obtain insurance at a reasonable cost, or in some cases to obtain any
insurance at all to cover liability that might be incurred from the indemnity
obligations. Ken Petroleum Corp. v. Questor Drilling Corp., 24 S.W.3d 344, 348
(Tex. 2000). Contractors were thus subjected to significant liability with no feasible
means of insuring against those obligations. Id. 

 The 1995 Act voids indemnity provisions that purport to indemnify a party
against liability caused by the indemnitee's sole or concurrent negligence and arising
from personal injury, death, or property damage. 1995 Act § 127.003. The
Legislature carved out the "mutual indemnity obligation" exception to the general
rule:

 With regard to a mutual indemnity obligation, the indemnity obligation
is limited to the extent of the coverage and dollar limits of insurance or
qualified self-insurance each party as indemnitor has agreed to provide
in equal amounts to the other party as indemnitee. 


1995 Act § 127.005(b). (2) Accordingly, a mutual indemnity obligation must be
"limited to the extent of coverage and dollar limits of insurance" that each party "has
agreed to provide in equal amounts" to the other party. Id. (emphasis added).

 In Ken Petroleum Corp. v. Questor Drilling Corp., the Texas Supreme Court
interpreted the 1991 version of the Act (3) with regard to "dollar limits" of insurance. 
24 S.W.3d at 348-51. Two courts of appeals had held that indemnity provisions were
void under the Act because the parties did not agree to procure the same dollar
amount of insurance to support their respective indemnity obligations. See Ken
Petroleum Corp. v. Questor Drilling Corp., 976 S.W.2d 283, 289 (Tex.
App.--Corpus Christi 1998), rev'd, 24 S.W.3d 344 (Tex. 2000); Weber Energy Corp.
v. Grey Wolf Drilling Co., 976 S.W.2d 766, 769 (Tex. App.--Houston [1st Dist.]
1998) rev'd, 24 S.W.3d 344 (Tex. 2000).

 The Texas Supreme Court reversed, holding that: (1) mutual indemnity
obligations can be valid under the 1991 Act, even if the parties agree to provide
liability insurance in differing amounts; (2) the indemnity obligations are enforceable
to the coverage and dollar limits that apply equally to both parties; and (3) the
indemnity agreement need not specify the amount of liability insurance. Ken
Petroleum, 24 S.W.3d at 351. The supreme court held that the indemnity obligation
is limited to the amount of insurance that is equally provided:

 The meaning of section 127.005(b) is not as clear as it might have been. 
But we conclude that it does not require parties to a mutual indemnity
agreement to agree to have insurance in the same dollar amount. 
Instead, it contemplates that the mutual indemnity obligations will be
enforceable only up to "the extent of the coverage and dollar limits of
insurance or qualified self-insurance each party as indemnitor has agreed
to provide in equal amounts to the other party as indemnitee." Tex. Civ.
Prac. & Rem. Code § 127.005(b). In other words, "the indemnity
obligation is limited" to the amount of insurance that is equally
provided. If one party provides more insurance than the other, the party
providing the higher amount of coverage may not enforce its right to
indemnity beyond the amount of coverage that the other party agreed to
provide. And the party providing the lower amount of insurance may
not enforce its right to indemnity beyond its own amount of coverage.

Id. at 350. 


Dollar Limits

 In issue one, appellants contend that the trial court erred in holding that the
indemnity agreement was unenforceable, invalid, or void. 

 Under the 1995 Act, a mutual indemnity obligation must be "limited" to the
extent of coverage and dollar limits of insurance that each party has agreed to provide
in equal amounts to the other party. 1995 Act § 127.005(b). Appellees contend that
the indemnity obligation was not limited to the extent of available insurance because
paragraphs 18.10 and 18.11 of the contract specified that the obligation was "without
limit and without regard to the cause or causes thereof or the negligence of any party
or parties." Appellees argue that this provision invalidates the contract. We disagree.

 Appellees' motion for summary judgment relied on the two underlying courts
of appeals opinions in Ken Petroleum and Weber Energy. See Ken Petroleum, 976
S.W.2d at 283; Weber, 976 S.W.2d at 766. After the trial court granted appellees'
motion for summary judgment in this case, the Texas Supreme Court reversed Ken
Petroleum and Weber Energy--the two courts of appeals opinions upon which
appellees relied. Ken Petroleum, 24 S.W.3d at 346. In Ken Petroleum, the supreme
court upheld contracts containing similar "without limit" and "without regard"
provisions. Id. at 357 n.16. Likewise, those provisions do not invalidate the contract
here. In accordance with the supreme court's opinion in Ken Petroleum, the contract
in this case is enforceable up to the dollar limits that apply equally to both parties. We sustain issue one. 

Extent of Coverage

 In issue two, appellants contend that the trial court erred in holding that the
indemnity provisions of the contract are neither "unilateral" nor "mutual" under the
Act. 

 "Mutual" and "unilateral" indemnity obligations, which are defined in the 1995
Act, are statutory exceptions to the general rule invalidating oilfield indemnity
agreements. 1995 Act § 127.005(b), (c). Appellees argue that the contract was
neither mutual nor unilateral because Swift did not indemnify Flournoy for
Flournoy's gross negligence, whereas Flournoy indemnified Swift for Swift's gross
negligence. The third paragraph of Exhibit "D" to the contract, entitled Footage
Drilling Contract, states, "In no event shall the assumption of liability by Operator
[Swift] in Articles 12.2, 12.3 and 18 above be construed to include the damage or loss
resulting from gross negligence of Contractor [Flournoy]." There is no provision
stating that Flournoy is not responsible for any damage or loss resulting from Swift's
gross negligence; therefore, Flournoy argues that the obligations are not reciprocal.

 Under section 127.005(b), a mutual indemnity obligation must be "limited to
the extent of coverage and dollar limits of insurance" that each party "has agreed to
provide in equal amounts" to the other party. 1995 Act § 127.005(b) (emphasis
added). In Ken Petroleum, the supreme court interpreted the 1991 Act with regard
to "dollar limits" of insurance. Ken Petroleum, 24 S.W.3d at 348-51. The supreme
court held that mutual indemnity obligations can be valid under the 1991 Act, even
if the parties agree to provide liability insurance in differing amounts:

 If one party provides more insurance than the other, the party providing
the higher amount of coverage may not enforce its right to indemnity
beyond the amount of coverage that the other party agreed to provide. 
And the party providing the lower amount of insurance may not enforce
its right to indemnity beyond its own amount of coverage.


Id. at 350. Similarly, in issue one above, we held that the contract is enforceable to
the dollar limits that apply equally to both parties. 

 Although the issue in Ken Petroleum was exclusively about dollar limits, the
supreme court held that "mutual indemnity obligations will be enforceable only up
to the extent of the coverage and dollar limits . . . each party as indemnitor has agreed
to provide in equal amounts to the other party as indemnitee." Id. (emphasis added). 
Therefore, we hold that mutual indemnity obligations are enforceable, but only up to
the extent of coverage the parties agreed to provide in equal amounts. In other words,
the indemnity obligation is limited to the lowest common denominator of coverage. 

 Moreover, paragraph 9.5 (4) of the contract in this case contained the following
savings clause:

 In the event any provision of this Contract is inconsistent with or
contrary to any applicable federal, state or local law, rule or regulation,
said provision shall be deemed to be modified to the extent required to
comply with said law, rule, or regulation and as so modified said
provision and this Contract shall continue in full force and effect. 

Rather than declare the entire contract unenforceable, the savings clause states that
any improper provision should be modified. We hold that mutual indemnity
obligations are enforceable, but only up to the extent of coverage the parties agreed
to provide in equal amounts. 

 We sustain issue two.

"Equal" vs. "Available"

 Appellees argue that the indemnity obligation is void because paragraphs 18.10
and 18.11 of the contract require that the indemnity obligation be supported by
"available liability insurance."

 Under the Act as originally promulgated, each party was required to agree in
writing to support the indemnity obligation with "available" liability insurance. (5) In
1989, however, the legislature amended section 127.005 to require "equal amounts"
of liability insurance. (6)
 

 Greene's Pressure Testing & Rentals, Inc. v. Flournoy Drilling Co., 113 F.3d
47 (5th Cir. 1997), explains the significant difference between the terms "equal" and
"available." The contract in Greene's, which was an outdated form contract designed
to satisfy the requirements of the pre-1989 Act, specified that the indemnity
agreement was supported by "available" liability insurance--language which was
amended by the Texas legislature in 1989. Id. at 51. Therefore, the Greene's contract
did not satisfy the Act at that time, which required that the parties provide "equal"
amounts of liability insurance. Id. at 51-52.

 In their motion for summary judgment, appellees relied on Greene's, arguing
that the provision requiring the indemnity obligation to be supported by "available
liability insurance" did not meet the requirements of the Act's mutual indemnity
obligation exception. The Greene's contract is distinguishable, however, because it
was an outdated form designed to satisfy the requirements of the pre-1989 Act. Id.
at 51. In contrast, the contract in this case was a June 1994 International Association
of Drilling Contractors form contract, which stated, "Operator will, as well, . . . and
shall maintain . . . insurance coverage of the same kind and in the same amount as is
required of the Contractor." (emphasis added). 

 We conclude that this provision, which was absent from the contract in
Greene's, satisfies the requirement to provide equal amounts of insurance under
section 127.005 of the 1995 Act.

Conspicuous

 In issue four, appellants contend that the trial court erred in failing to find that
the indemnity provisions of the contract are conspicuous within the meaning of the
Uniform Commercial Code (UCC) and the Texas Supreme Court's opinion in Dresser
Industries, Inc. v. Page Petroleum, 853 S.W.2d 505 (Tex. 1993).

 In Dresser, the supreme court held that the fair notice requirements of
conspicuousness apply to indemnity agreements. Id. at 509. The conspicuousness
issue is a question of law for the court. Id. The Dresser court adopted the UCC
conspicuousness standard for indemnity agreements:

 A term or clause is conspicuous when it is so written that a reasonable
person against whom it is to operate ought to have noticed it. A printed
heading in capitals (as: NON-NEGOTIABLE BILL OF LADING) is
conspicuous. Language in the body of a form is "conspicuous" if it is
in larger or other contrasting type or color. But in a telegram any stated
term is "conspicuous". 

Id. at 510-11 (citing Tex. Bus. & Com. Code Ann. § 1.201(10) (Vernon Supp.
2002)). 

 The Dresser release provisions were located on the back of a work order in a
series of numbered paragraphs without headings or contrasting type. Dresser, 853
S.W.2d at 510-11. The contract had eighteen uniformly printed and spaced
paragraphs printed on the reverse side of the contract with a provision incorporating
all eighteen paragraphs on the front side of the contract. Id. at 511 n.6. The court
held that the contractual exculpatory provisions were without effect since they did not
comply with the fair notice requirement of conspicuousness. Id.; see also Enserch
Corp. v. Parker, 794 S.W.2d 2, 9 (Tex. 1990) (holding that indemnity language on
front of one-page contract was conspicuous).

 Appellees argue that the indemnity language in this case is not conspicuous
because it is scattered, not on the front of the document, not in contrasting color, not
in a different typeface, and among unrelated terms. We disagree. Unlike the Dresser
provisions which were on the back of a work order, the indemnity language in this
contract was on the front of a footage drilling contract. Paragraphs 18.10 and 18.11
are respectively entitled "Contractor's Indemnification of Operator" and "Operator's
Indemnification of Contractor." Both paragraphs are contained under the general and
more encompassing paragraph 18 heading, which is set off in a slightly larger font
and in all bold, capital letters as follows: "RESPONSIBILITY FOR LOSS OR
DAMAGE, INDEMNITY, RELEASE OF LIABILITY AND ALLOCATION OF
RISK." The indemnity agreement is not amongst unrelated terms, but instead is
within this general heading containing 15 separate sub-paragraphs dealing with
indemnity, responsibility for loss or damage, releases of liability, and allocations of
risk. We hold that the indemnity provisions of the contract are conspicuous. 

 We sustain issue four.

Remaining Issues

 As set forth above, we sustain issues one, two, and four, holding that: (1) the
contract is enforceable to the extent of coverage and dollar limits that apply equally
to both parties and (2) the indemnity provisions are appropriately conspicuous. We
need not reach the merits of appellants' following alternative arguments as to why
they are entitled to indemnification: (1) whether the contract's savings clause
conforms the terms to an enforceable agreement; (2) whether Swift was an additional
insured; (3) if so, whether appellees raised a fact issue on appellants' allegations of
waiver, estoppel, and bad faith; (4) whether the trial court should have resolved any
contract ambiguity in Swift's favor; and (5) whether the trial court erred in denying
appellants leave to amend their pleadings. In light of our disposition reversing and
remanding this case, we do not address these remaining issues. Conclusion

 We hold that the trial court erred in granting appellees' motion for summary
judgment. We reverse the judgment of the trial court and remand the cause for
proceedings consistent with this opinion.



 Adele Hedges

 Justice


Panel consists of Justices Mirabal, Hedges, and Jennings

Publish. Tex. R. App. P. 47.4.
1. Unless otherwise indicated, this opinion will refer to the Act as it existed in
1995. Act of May 27, 1995, 74th Leg., R.S., ch. 679, § 1, 1995 Tex. Gen.
Laws 3655, amended by Act of May 26, 1999, 76th Leg., R.S., ch. 1006, § 1,
1999 Tex. Gen. Laws 3791 [hereinafter 1995 Act].
2. We do not consider the 1999 amendments to the 1995 Act because they took
effect after the personal injuries in this case occurred. The 1999 amendment
to section 127.005(b) replaced the phrase "provide in equal amounts" with
"obtain for the benefit of." 


 With regard to a mutual indemnity obligation, the
indemnity obligation is limited to the extent of the
coverage and dollar limits of insurance or qualified
self-insurance each party as indemnitor has agreed to
<<+obtain for the benefit of+>> <<-provide in equal
amounts->> to the other party as indemnitee. 


 Act of May 27, 1995, 74th Leg., R.S., ch. 679, § 1, 1995 Tex. Gen. Laws 3655,
amended by Act of May 26, 1999, 76th Leg., R.S., ch. 1006, § 1, 1999 Tex.
Gen. Laws 3791 (current version at Tex. Civ. Prac. & Rem. Code § 127.005).
3. See Act of April 9, 1991, 72nd Leg., R.S., ch. 36, § 3, 1991 Tex. Gen. Laws
430-31 (amended 1995, 1999) (current version at Tex. Civ. Prac. & Rem.
Code § 127.005).
4. Paragraph 18.10 contained a second savings clause, which stated as follows:


 If it is judicially determined that the monetary limits of insurance
required hereunder or of the indemnities voluntarily assumed. . .
exceed the maximum limits permitted under applicable law, it is
agreed that said insurance requirements or indemnities shall
automatically be amended to conform to the maximum monetary
limits permitted under such law.
5. See Act of May 19, 1973, R.S., 63rd Leg., ch. 646 § 4(c), 1973 Tex. Gen. Laws
1767-68 (amended 1985, 1989, 1991, 1995, 1999) (current version at Tex. Civ.
Prac. & Rem. Code § 127.005).
6. See Act of May 27, 1989, 71st Leg., R.S., ch. 1102, § 3, 1989 Tex. Gen. Laws
4557-58 (amended 1991, 1995, 1999) (current version at Tex. Civ. Prac. &
Rem. Code § 127.005).