**SUGAR LAND PROPERTIES, INC. d/b/a Sweetwater Country Club, Appellant,**

v.

**Lawrence F. BECNEL, Appellee.**

**Lawrence F. Becnel, Appellant,**

v.

**Sugar Land Properties, Inc. d/b/a Sweetwater Country Club, Appellee.**

No. 01–99–00657–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 13, 2000.

Clinton E. Wells, Jr., Houston, for Appellant.

Timothy J. Casper, Law Offices of William Luck, Jr., Bellaire, for Appellee.

Panel consists of Chief Justice SCHNEIDER and Justices WILSON and SMITH.*

## OPINION

DAVIE L. WILSON, Justice.

Both parties appeal from a final judgment in a personal injury suit. Lawrence F. Becnel, plaintiff below, contests the trial court's reduction of the jury award. Sugar Land Properties, Inc., d/b/a Sweetwater Country Club, defendant below, contests the trial court's denial of its motion for judgment notwithstanding the verdict.[1] We affirm in part and reverse and render judgment in part.

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Becnel, a member of the Sweetwater Country Club, was injured while swimming laps in the country club pool owned by Sugar Land Properties. The injury occurred when 11–year–old Jeffery Harris[2] threw a kick board, hitting Becnel in the center of his left goggle and causing serious injury to his eye.

At the time of the incident, Jeffery was participating in a swimming class taught by Erin Newberry in the swimming lanes adjacent to the lane Becnel was using.[3] The class was for members of the Sweetwater Country Club swim team.

Becnel sued Jeffery Harris's parents, and Sugar Land.[4] Before trial, Becnel settled his claim against the Harrises for $12,500, and they were subsequently nonsuited. The case against the remaining defendant, Sugar Land, was tried to a jury. At the close of Becnel's case, Sugar Land made a motion to dismiss on the ground that there was no evidence that Sweetwater Country Club and Sugar Land Properties had control of the activity that was occurring at the time of the incident. Sugar Land argued that control of the activity was "with the person who was running and conducting the swim class." The court denied the motion to dismiss.

Sugar Land Executive vice president Stephen James Ewbank testified for Sugar Land. According to Ewbank, Sugar Land had the responsibility to maintain the pool. Ewbank testified that Sugar Land had hired Newberry "as a contract employee" to promote the swim classes. She did what was needed to promote the swim program. Ewbank did not negotiate any of the agreements with Newberry, and his information about Newberry's relationship with the club was based on what someone had told him. There was no written contract between Newberry and Sugar Land.

Ewbank testified that Sugar Land did not turn the entire facility over to Newberry and that the facility was open to other club members. He testified that Sugar Land tried to assure that everyone was safe.

The court rejected the plaintiff's proposed charge, which would have required a finding on simple negligence. The court's charge read in part:

---

* The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. Record references to Sugar Land Properties appear as both "Sugar Land" and "Sugarland." Consistent with the caption of the case, we use "Sugar Land."

2. The Plaintiffs' original petition named "Jerome Harris, a minor" as one of the defendants. The minor was identified at trial as "Jeffery Harris."

3. The plaintiffs did not sue Erin Newberry.

4. Becnel's wife, Mary A. Becnel, was also a plaintiff. At the end of Mrs. Becnel's testimony, the plaintiffs nonsuited any claims in its pleading regarding her.

Did the negligence, if any, of those named below proximately cause the occurrence in question?

With respect to the activity that occurred on the premises, SUGARLAND PROPERTIES, INC. was negligent if:

a. the activity posed an unreasonable risk of harm, and

b. SUGARLAND PROPERTIES, INC. knew or reasonably should have known of the danger,

c. SUGARLAND PROPERTIES, INC. failed to exercise ordinary care to protect LAWRENCE BECNEL from the danger, by both failing to adequately warn LAWRENCE BECNEL of the activity and failing to make the activity safe.

"Ordinary care," when used with respect to the conduct of SUGARLAND PROPERTIES, INC. as an owner or occupier of a premises, means that degree of care that would be used by an owner or occupier of ordinary prudence under the same or similar circumstances.

Sugar Land objected to the charge because the court had refused to include Sugar Land's requested paragraph requiring the jury to find that Sugar Land "had supervisory control over the defect-producing activity" before it could find Sugar Land negligent.

The jury found Jeffrey Harris 30 per cent negligent and Sugar Land 70 per cent negligent. It awarded $40,000 for physical pain and mental anguish, $10,000 for physical impairment, and $2,730 for medical care.

Sugar Land filed a motion for judgment notwithstanding the verdict (JNOV). Sugar Land contended that (1) Becnel had produced no evidence to establish an employer/employee relationship between Newberry and the country club; rather, the evidence established Newberry was an independent contractor; and (2) Becnel had produced no evidence that the country club exercised any control over the swim

class. The court initially granted the motion and signed the proposed JNOV.

The court subsequently concluded it had erred in granting Sugar Land's motion and informed the parties it would sign Becnel's proposed judgment unless Sugar Land disagreed with the damages in the proposed judgment. Sugar Land then filed a memorandum on joint and several liability and a proposed judgment setting forth the following calculation of damages:

| | |
|---|---|
| Verdict | $52,730 |
| Less Credit | 12,500 |
| 70% of 40,230 | |
| | 28,161 |
| Less Medical Payment | 1,735 |
| | $26,426 |
| Plus 10% interest From 9/13/96 Until 4/13/69 [sic] | 6,828 |
| | $33,254 |

The court signed the judgment April 21, 1999. Becnel filed his notice of appeal on May 20, 1999; Sugar Land filed its notice on June 2, 1999.

**Sugar Land's Points of Error**

Sugar Land raises two points of error. In point of error one, it contends that it cannot be liable for the acts of its "independent contractor" Erin Newberry because there was no evidence it retained the right to supervisory control over Newberry's swimming class. In point of error two, Sugar Land contends that, if this Court finds a factual issue exists on the right to control, then the trial court should have charged the jury on this issue.

In his live pleadings at trial, Becnel alleged in part, "At the time of the incident in question, minor Jerome Harris was engaging in swimming practice pursuant to the direction of instructor Erin Petersen [sic], who was at all times material hereto acting in the course and scope of her employment and/or agency with SWEETWATER." In its answer, Sugar Land did not allege Newberry was an independent contractor and did not charac-

terize her as such until its opening statement. Sugar Land also did not request a jury instruction or question on its defense that Newberry was an independent contractor. Instead, it requested only an instruction that would have required Becnel to prove Sugar Land had "supervisory control over the defect-producing activity." An issue of supervisory control, however, would not arise unless and until Sugar Land established Newberry was an independent contractor. *See Taylor, B. & H. Ry. v. Warner,* 88 Tex. 642, 32 S.W. 868, 870 (Tex.1895) (stating that person found performing work of another is presumed to be in employment of person whose work is being done).

■ If proved, Newberry's purported independent-contractor status, together with her having sufficient control over the "activity," would relieve Sugar Land of liability. *See Abalos v. Oil Dev. Co.,* 544 S.W.2d 627, 631 (Tex.1976) (stating that responsibility for conducting task in safe manner rests with independent contractor and not premises owner or occupier when activity is conducted by, and is under control of, independent contractor, and when danger arises from employees' performance of task). Thus, Newberry's independent-contractor status was in the nature of an affirmative defense. *See Rosenthal v. Grocers Supply Co., Inc.,* 981 S.W.2d 220, 222 (Tex.App.—Houston [1st Dist.] 1998, no pet.) (referring to appellee's "independent contractor defense"); *Alvarado v. Old Republic Ins. Co.,* 951 S.W.2d 254, 259 (Tex.App.—Corpus Christi 1997, no writ) (in worker's compensation case, stating that independent contractor status was "in the nature of of affirmative defense" because it would relieve carrier of liability). Unless Sugar Land conclusively proved its defense of Newberry's independent-contractor status, it waived this point of error by not getting a finding on the question. Tex.R. Civ. P. 279.

■ The determination of whether one is acting in the capacity of an indepen-

dent contractor rests on the amount of control that the employer exerts or has a right to exert over the details of the work. *Newspapers, Inc. v. Love,* 380 S.W.2d 582, 591 (Tex.1964); *Hoechst Celanese Corp. v. Compton,* 899 S.W.2d 215, 220 (Tex.App.— Houston [14th Dist.] 1994, writ denied). The court generally analyzes five factors in determining the amount of control retained by the employer: (1) the independent nature of the worker's business; (2) her obligation to furnish the necessary tools, supplies, and materials to perform the job; (3) her right to control the progress of the work except as to final results; (4) the time for which she is employed; and (5) whether she is paid by the time or by the job. *Pitchfork Land & Cattle Co. v. King,* 162 Tex. 331, 346 S.W.2d 598, 603 (1961). Examples of the type of control an employer normally exercises include when and where to begin and stop work, the regularity of hours, the amount of time spent on particular aspects of the work, the tools and appliances used to perform the work, and the physical method or manner of accomplishing the end result. *Thompson v. Travelers Indem. Co.,* 789 S.W.2d 277, 278–79 (Tex.1990).

■ Sugar Land did not conclusively prove Newberry's independent-contractor status, particularly in relation to the negligent "activity" Becnel alleged. Ewbank testified that Sugar Land had hired Newberry "as a contract employee." He also stated that Newberry was "hired to promote the swim classes. It was really her contract to do with what she wanted to. So, she promoted it herself and maintained the classes, and held the classes, and oversaw the children." Ewbank, however, acknowledged that he did not negotiate any of the agreements with Newberry and that his information about Newberry's relationship with the club was based on what someone had told him. Ewbank also acknowledged that they did not turn the entire facility over to Newberry, that the facility was open to other club members,

and that Sugar Land tried to assure that everyone was safe.

Becnel's allegation of negligence, however, was not limited to Newberry's conduct of the swimming classes. In its live pleadings, Becnel alleged Sweetwater was directly negligent by its own actions in the following regards: (1) in allowing children to swim with adults; (2) in failing to adequately and/or properly train instructors; (3) in failing to adequately and/or properly supervise children; (4) in failing to provide and implement appropriate procedures and regulations regarding swim-class discipline, conduct, location, and supervision; (5) in failing to provide adequate adult supervision of swim-class participants; and (6) in entrusting children with flotation devices capable of causing serious bodily injury.

Becnel also focused the jury's attention on more than just Newberry's activities. In his opening statement, Becnel represented the evidence would show Sugar Land was

> negligent ... in failing to provide adequate supervision for these children, who were there at the invitation of the club to participate in a swim team. They failed to adequately train the individual that was assigned to supervise these children, or in the alternative, they failed to adequately provide facilities for the children to enjoy the swim team at the same time other members enjoyed the pool.
>
> These facilities—the swimming facilities—were all made available through the Sweetwater County Club, they were all a part of that operation, and they were all under the control of the club.

In closing argument, Becnel pointed to the failure to supervise the children adequately, but also referred to permitting objects to be thrown in one area while "someone else is engaging in another activity in another area." Becnel referred to Sugar Land's providing the supervisor, and suggested alternatives Sugar Land could have provided: setting aside the pool solely for the children during swimming class or providing a barrier between the class and the swimming lanes. Even Sugar Land recognized the relevance of its control over Newberry's hiring, arguing that because Newberry had worked for them before, she was not an unknown entity and Sugar Land would not have hired her had they not known she had the ability to take care of the children.

Becnel's allegations of negligent activity encompassed far more than Sugar Land's responsibility for Newberry's conduct of the swimming class. Sugar Land did not seek, much less get, a favorable finding on Newberry's independent contractor status, which was its burden; and Sugar Land does not argue in this Court that Newberry's independent contractor status was established in the evidence as a matter of law.

We overrule point of error one.

■■■ In point of error two, Sugar Land contends the trial court should have included the following in its charge on elements of negligence: "SUGARLAND PROPERTIES, INC. was negligent if ... [it] had supervisory control over the defect-producing activity." The trial court has considerable discretion in deciding what instructions are necessary and proper in submitting issues to the jury. *State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 451 (Tex.1997); *Harris County v. Demny*, 886 S.W.2d 330, 332 (Tex.App.—Houston [1st Dist.] 1994, writ denied). On appeal, we consider only whether the trial court acted arbitrarily and do not substitute our judgment for the trial court's. *Demny*, 886 S.W.2d at 332. We reverse jury-charge error only if it probably caused the rendition of an improper judgment. TEX. R.APP. P. 44.1(a); *see also Demny*, 886 S.W.2d at 332.

■■■ Although Becnel pleaded simple negligence, the charge to the jury was more consistent with a premises-liability case. To establish liability in a premises

case, a plaintiff-invitee must prove: (1) a condition of the premises created an unreasonable risk of harm to the invitee; (2) the owner knew or reasonably should have known of the condition; (3) the owner failed to exercise ordinary care to protect the invitee from danger; (4) the owner's failure was a proximate cause of injury to the invitee. *State Dep't. of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex.1992). The charge given to the jury included all of these elements. With the exception of the references to "activity," rather than "condition," the instruction was the proper instruction for a premises-liability case in which the plaintiff is an invitee. *See State v. Williams*, 940 S.W.2d 583, 584–85 (Tex.1996).

Furthermore, the portion of the instruction requiring Becnel to prove Sugar Land's failure to exercise ordinary care implicitly required Becnel to prove Sugar Land's control over the activity was such that Sugar Land it could exercise care. The trial court did not abuse its discretion in refusing Sugar Land's requested instruction.

We overrule Sugar Land's point of error two.

### Becnel's Points of Error

 In point of error one, Becnel contends the trial court erred in reducing the jury's verdict by both a dollar-for-dollar credit and a proportionate reduction for Sugar Land's responsibility. Resolution of the question requires us to interpret two statutory provisions. Interpretation of a statute is a question of law, which we review de novo. *See Mitchell Energy Corp. v. Ashworth*, 943 S.W.2d 436, 437 (Tex.1997).

Civil Practice and Remedies Code section 33.012(b) provides:

> (b) If the claimant has settled with one or more persons, the court shall further reduce the amount of damages to be recovered by the claimant with respect to a cause of action by a credit equal to one of the following, as elected in accordance with Section 33.014:
>
> (1) the sum of the dollar amounts of all settlements; or
>
> (2) a dollar amount equal to the sum of the following percentages of damages found by the trier of fact:
>
> > (A) 5 percent of those damages up to $200,000;
> >
> > (B) 10 percent of those damages from $200,001 to $400,000;
> >
> > (C) 15 percent of those damages from $400,001 to $500,000; and
> >
> > (D) 20 percent of those damages greater than $500,000.

Tex. Civ. Prac. & Rem.Code Ann. § 33.012(b) (Vernon 1997). Sugar Land elected the dollar-for-dollar amount in section 33.012(b)(1). That reduced Sugar Land's liability by $12,500, the amount of Becnel's settlement with the Harrisses, and resulted in a liability of $40,230.

The trial court then further reduced Sugar Land's liability by factoring in Sugar Land's percentage of responsibility. That resulted in a liability of $28,161, *i.e.,* 70 percent of $40,230. The court was presumably acting under the authority of Civil Practice and Remedies Code section 33.013, which provides:

> (a) Except as provided in Subsections (b) and (c), a liable defendant is liable to a claimant only for the percentage of the damages found by the trier of fact equal to that defendant's percentage of responsibility with respect to the personal injury, property damage, death, or other harm for which the damages are allowed.
>
> (b) Notwithstanding Subsection (a), each liable defendant is, in addition to his liability under Subsection (a), jointly and severally liable for the damages recoverable by the claimant under Section 33.012 with respect to a cause of action if the percentage of responsibility attributed to the defendant is greater than 50 percent.

(c) Notwithstanding Subsections (a) and (b), each liable defendant is, in addition to his liability under Subsection (a), jointly and severally liable for the damages recoverable by the claimant under Section 33.012 with respect to a cause of action if the percentage of responsibility attributed to the defendant is equal to or greater than 15 percent and:

(1) the claimant's personal injury, property damage, death, or other harm is caused by the depositing, discharge, or release into the environment of any hazardous or harmful substance as described in Section 33.011(7); or

(2) the claimant's personal injury, property damage, death, or other harm resulted from a toxic tort.

(d) This section does not create a cause of action.

TEX. CIV. PRAC. & REM.CODE ANN. § 33.013 (Vernon 1997).

The issue is whether a defendant whose responsibility is greater than 50 percent is jointly and severally liable for the amount remaining after that defendant has received a dollar-for-dollar credit for all settlements. We hold that it is.

Although this appears to be a question of first impression in Texas, the Fifth Circuit addressed a similar question under the predecessor statutes. *McNair v. Owens–Corning Fiberglas Corp.*, 890 F.2d 753, 756–60 (5th Cir.1989); *see* Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 2.09, 1987 Tex. Gen. Laws 37, 42 (former TEX. CIV. PRAC. & REM.CODE ANN. § 33.013, since amended). The McNairs brought a products-liability suit against Celotex and twelve other defendants. Before the case was submitted to the jury, the McNairs reached cash settlements totaling $53,800 with all defendants except Celotex and Raymark Industries (a bankrupt defendant not involved in the subsequent appeal). The jury returned a verdict for the McNairs and determined that they were entitled to recover compensatory damages totaling $125,000. The jury assigned 30 percent of the responsibility for the McNairs' injuries to Celotex, 10 percent of the responsibility to Raymark, and 60 percent of the responsibility to the settling defendants. The trial court determined that Celotex and Raymark should be jointly and severally liable for $71,200, the amount of the jury award less the amount of the cash settlements. On appeal, Celotex argued that the McNairs' recovery should have been reduced by the percentage of responsibility the jury assigned to the settling parties. The Fifth Circuit disagreed. *McNair*, 890 F.2d at 755.

In reaching its conclusion, the Fifth Circuit examined the language of, and relationship between, sections 33.012 and 33.013. The court reasoned:

Subsection 33.013(a) of the statute sets forth a general rule that a defendant will be liable for damages in proportion to the percentage of responsibility the jury assigns to the defendant. *This general provision focuses on the damages as found by the trier of fact and not on the damages recoverable pursuant to section 33.012.* Thus, under subsection 33.013(a), Celotex would be liable for $37,500, or 30% of $125,000.

Subsections 33.013(b)-(c), however, limit the applicability of this general rule and provide that a defendant may be jointly and severally liable for additional damages. *Significantly, unlike subsection 33.013(a), these provisions do focus on damages recoverable pursuant to section 33.012-*in this case, $71,200. The district court correctly determined that Celotex should be jointly and severally liable under these provisions and entered judgment against Celotex for $71,200.

*McNair*, 890 F.2d at 756–57 (footnote omitted, emphasis added).

Section 33.012(b) has not changed since the decision in *McNair*. The subsequent changes to section 33.013 affected only the thresholds for joint and several liability and the situations to which the various

thresholds apply. *Compare* TEX. CIV. PRAC. & REM.CODE ANN. § 33.013 (Vernon 1997) *with* Act of June 3, 1987, 70th Leg., 1st C.S., ch. 2, § 2.09, 1987 Tex. Gen. Laws 37, 42 (former TEX. CIV. PRAC. & REM.CODE ANN. § 33.013, since amended). The changes do not alter the applicability of the *McNair* court's reasoning.

Decisions of the federal courts of appeals do not bind Texas state courts, but they are received with respectful consideration. *Hayes v. Pin Oak Petroleum, Inc.,* 798 S.W.2d 668, 672 n. 5 (Tex.App.—Austin 1990, writ denied). Although not bound by the *McNair* decision, we find its reasoning persuasive and adopt it in deciding the present case.

The recoverable damages in the present case were $40,230, *i.e.*, the total damages of $52,730 found by the jury minus the credit of $12,500 for the settlement. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 33.012(b)(1) (Vernon 1997). Because the jury attributed more than 50 percent of the negligence to Sugar Land, it was jointly and severally liable for the recoverable damages. TEX. CIV. PRAC. & REM.CODE ANN. § 33.013(b) (Vernon 1997). The trial court erred in further reducing that amount.

We sustain Becnel's point of error one.

In point of error two, Becnel contends the trial court erred in reducing the jury's verdict by the amount of medical payment. Becnel argues that the payment constituted an affirmative defense, which Sugar Land waived by not having affirmatively pleaded it. We agree.

Payment is an affirmative defense that must be pleaded. TEX.R. CIV. P. 94; *see also Brown v. American Transfer & Storage Co.,* 601 S.W.2d 931, 936 (Tex.1980) (stating right of offset is affirmative defense and burden of pleading and proving facts necessary to support offset is on party making assertion). Furthermore, Texas Rule of Civil Procedure 95 provides:

> When a defendant shall desire to prove payment, he shall file with his plea an account stating distinctly the nature of such payment, and the several items thereof; failing to do so, he shall not be allowed to prove the same, unless it be so plainly and particularly described in the plea as to give the plaintiff full notice of the character thereof.

The record before this Court contains no account stating the nature of Sugar Land's purported payment to Becnel. There is no indication that such a record was before the trial court.

We sustain Becnel's point of error two.

## CONCLUSION

We reverse in part and render judgment that the jury's verdict be offset only by the $12,500 credit. We affirm the remainder of the trial court's judgment.