# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-03-00512-CV
---

### Stephen James Utts, M.D., Appellant

### v.

### Dennie Short, Individually and as Executor of the Estate of Clifton Short, Deceased; Norma L. Short; Patricia Ann Cain; and Sam Short, Appellees

---
### FROM THE PROBATE COURT NO. 1 OF TRAVIS COUNTY
### NO. 63,688-A, HONORABLE GUY S. HERMAN, JUDGE PRESIDING
---

## M E M O R A N D U M   O P I N I O N

In this wrongful death case, we must decide whether the trial court, upon remand from the supreme court, erred in its allocation of a settlement credit to the recoveries of appellees, Dennie Short, individually and as executor of the estate of Clifton Short, deceased; Norma L. Short; Patricia Ann Cain; and Sam Short (collectively, "appellees").[1]  In the first of two issues, appellant Stephen James Utts, M.D., contends that the trial court erred by not allocating the settlement credit in proportion to each appellee's percentage of the total jury award.  In his second issue, Dr. Utts contends that we should reform the trial court's judgment to reflect the prejudgment and

---

[1]  Appellees are related to the deceased, Clifton Short, as follows: Norma L. Short is his widow; Dennie Short, Patricia Ann Cain, and Sam Short are his children.  A fourth child, Dorothy Short Walker, settled in earlier proceedings below and is no longer a party.  Her settlement is the subject of the disputed settlement credit.

postjudgment interest rates as amended in the 2003 legislative session. For the reasons set forth below, we affirm the judgment of the trial court.

## BACKGROUND

This case involves a lengthy procedural history, beginning with the filing of suit in 1994 against Dr. Utts, HCA South Austin Medical Center ("HCA"), and Dr. Jean-Pierre Forage[2] for damages arising out of the alleged wrongful death of Clifton Short. In 1997, one of the plaintiffs, Dorothy Short Walker, settled her claims with HCA for $200,000. Her release with HCA directed that $50,000 be paid to Walker and $150,000 be paid to the law firm representing all of the plaintiffs, including Walker. On the same day she signed the release, Walker directed her attorneys to pay from the $50,000 portion a $10,000 gift to each individual plaintiff, Dennie Short, Norma L. Short, Patricia Ann Cain, and Sam Short. Soon afterward, those four individuals and the Estate settled with HCA for ten dollars each, resulting in HCA's total settlement of $200,050 with all plaintiffs. All of the plaintiffs then nonsuited HCA. Shortly thereafter, Walker nonsuited her claim against Dr. Utts and no longer participated in the case.

The case then proceeded to trial, with Dr. Utts as the only remaining defendant. Before trial, Dr. Utts filed a written election for a $200,040[3] dollar-for-dollar settlement credit as to each "claimant" under chapter 33 of the civil practice and remedies code.[4] The plaintiffs objected,

---

[2] Dr. Forage was nonsuited early in the litigation.

[3] This was later corrected to $200,050 to reflect the total settlement with HCA.

[4] *See* Act of May 8, 1995, 74th Leg., R.S., ch. 136, § 1, sec. 33.011(1), 1995 Tex. Gen. Laws 971, 973 (definition of "claimant") (amended 2003) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 33.011(1) (West Supp. 2004)); *id.* sec. 33.012, 1995 Tex. Gen. Laws at 974 (providing for

arguing that Dr. Utts was not entitled to a credit for Walker's $200,000 settlement because Walker was not a *claimant* as defined in chapter 33. They further contended that because they settled with HCA for ten dollars each, Dr. Utts was only entitled to a ten-dollar credit per plaintiff, for a total of fifty dollars. After a jury trial, the jury found Dr. Utts twenty-five percent negligent and HCA seventy-five percent negligent. The jury awarded $100,000 to the Estate; $300,000 to Norma Short; and $12,000 to Dennie, Patricia, and Sam.

The plaintiffs moved for judgment on the verdict with a fifty-dollar settlement credit. Dr. Utts countered that he was entitled to an additional $200,000 credit because the remaining plaintiffs benefited from Walker's settlement with HCA. After a hearing on the motion for judgment, the trial court determined that Dr. Utts waived the right to the $200,000 credit because he did not introduce evidence about the settlement before the case was submitted to the jury. The trial court also determined that Walker was not a claimant as defined under chapter 33 of the civil practice and remedies code. The trial court rendered judgment for the plaintiffs based on the total jury award, less ten dollars per plaintiff, for a total of a fifty-dollar settlement credit.

Dr. Utts appealed to this Court, contending that the structure of the settlement was a sham to circumvent his statutory right to a settlement credit. This Court affirmed the judgment of the trial court on the ground that "although Walker was a claimant under the Code, a defendant is not entitled to receive credit for one claimant's settlement against the recovery of a different claimant in a wrongful death case." *Utts v. Short*, 987 S.W.2d 626, 633 (Tex. App.—Austin 1999), *rev'd*, 81

election of dollar-for-dollar settlement credit) (amended 2003) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 33.012 (West Supp. 2004)).

3

S.W.3d 822 (Tex. 2002). Dr. Utts then appealed to the supreme court, which initially affirmed the judgment of this Court. *See Utts v. Short*, 44 Tex. Sup. Ct. J. 134 (Dec. 7, 2000), *op. withdrawn on reh'g*, 2001 WL 1795019 (Feb. 28, 2002). On a second rehearing, the supreme court reversed the judgment of this Court and remanded the case to the trial court. *Utts*, 81 S.W.3d at 830 [hereinafter *Utts I*]. A majority of the court held that Dr. Utts had presented sufficient evidence raising a presumption of entitlement to a $190,000 settlement credit: $150,000 for expenses paid to the plaintiffs' attorney and $40,000 for Walker's four $10,000 payments to the individual plaintiffs. *Id.* "Consequently, we presume that each individual Short family member's recovery from Dr. Utts should be credited with the amount reflecting the benefit he or she received from the settlement proceeds." *Id.* (citing *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 927 (Tex. 1998)). The burden then shifted to each plaintiff to rebut that presumption. *Id.* The supreme court remanded the case to the trial court to "allow each Short family member to present evidence to show that he or she did not receive any benefit from the Walker-HCA settlement." *Id.*

On remand to the trial court, appellees submitted with their motion for judgment affidavits attesting that they did not believe they benefited from Walker's settlement. They averred in the alternative that because $150,000 of the settlement went toward their attorney's expenses, they benefited individually in a one-sixth share, or $25,000.[5] They further averred that the $10,000 payments to each individual were gifts from Walker, not part of the settlement. At the hearing on the motion for judgment, counsel for Dr. Utts objected to the affidavits on several grounds but did

---

[5] The $150,000 expense payment was divided by six because there were six plaintiffs at the time of the settlement: Dorothy Short Walker, the Estate of Clifton Short, Dennie Short, Norma Short, Patricia Ann Cain, and Sam Short.

4

not obtain a ruling on the objections. The trial court determined that Dr. Utts was entitled to a $190,000 credit: $150,000 for the expenses paid and $40,000 for Dorothy Walker's payments to the individual plaintiffs. The trial court allocated a $35,000 credit to each individual's recovery, which eliminated the awards to Dennie, Patricia, and Sam. The trial court allocated a $25,000 credit to the Estate because it had not received a gift from Walker. Accounting for prejudgment interest, the judgment awarded $142,785.72 to Norma Short and $67,193.28 to the Estate. The judgment further ordered that appellees pay Dr. Utts $10,664.10 in court costs for the earlier appeals to this Court and the supreme court.

In two issues, Dr. Utts contends that the judgment should be reformed. Dr. Utts urges in his first issue that the trial court's allocation of the settlement credit was in error, because it disregarded the supreme court's directives in *Utts I* and *Drilex Systems, Inc. v. Flores*. *See Utts I*, 81 S.W.3d at 822; *Drilex Sys., Inc. v. Flores*, 1 S.W.3d 112 (Tex. 1999). The proper allocation, Dr. Utts asserts, is to divide the settlement credit in proportion to each appellee's percentage of the total jury award. Dr. Utts contends in his second issue that we should reform the trial court's judgment to reflect the prejudgment and postjudgment interest rates as amended in the 2003 legislative session, to wit a minimum of five percent, instead of the former minimum of ten percent.

## ANALYSIS

### *Allocation of Settlement Credit*

In his first issue, Dr. Utts contends that the trial court incorrectly allocated the settlement credit among appellees' recoveries. The parties disagree about which standard of review we are to apply, and the *Utts I* decision is silent on this issue. Dr. Utts urges that allocation of

5

settlement credits is a legal question and accordingly we should apply a *de novo* standard of review.

For support, Dr. Utts cites *Sugarland Properties, Inc. v. Becnel*. 26 S.W.3d 113 (Tex.

App.—Houston [1st Dist.] 2000, no pet.). There, the issue was whether the trial court erred in

reducing the verdict by both a dollar-for-dollar and proportionate reduction settlement credit. *Id.* at

119. Because the resolution of the question required interpretation of two statutory provisions, the

court conducted a *de novo* review. *Id.* Dr. Utts also cites *Brown & Root, Inc. v. Shelton*, which

simply cited *Becnel* for the proposition that "proper application of settlement credits is a question

of law reviewed by a de novo standard." No. 12-01-00259-CV, 2003 Tex. App. LEXIS 6642, at *32

(Tex. App.—Tyler July 31, 2003, no pet.).

Appellees counter that we should apply an abuse-of-discretion standard of review

because allocation of the settlement credit in this instance involved a factual determination.

Appellees cite *Sanchez v. Mica Corp.* for support. 107 S.W.3d 13 (Tex. App.—San Antonio 2002,

pet. granted), *judgm't vacated in part on other grounds and remanded for settlement by* 2003 Tex.

LEXIS 38 (Tex. Mar. 27, 2003). There, the appellant contested the trial court's ruling that the initial

settlement allocation was a sham transaction. The appellees urged the court to apply an abuse-of-

discretion standard of review because the determination involved mixed questions of law and fact.

The court agreed with appellees and reviewed the ruling for an abuse of discretion. *Id.* at 24.

We agree with appellees that we should review the allocation of the settlement credit

under an abuse-of-discretion standard. Unlike in *Becnel*, our analysis of this issue does not involve

statutory interpretation. Moreover, unlike *Sanchez*, Dr. Utts's entitlement to the settlement credit

is not in dispute. Instead, Dr. Utts only challenges the trial court's *allocation* of the credit among

6

the appellees. The supreme court presumed that appellees benefited from the settlement and that the trial court should credit each appellee's recovery "with the amount reflecting the benefit he or she received from the settlement proceeds." *Utts I*, 81 S.W.3d at 830 (citing *Ellender*, 968 S.W.2d at 927). The burden then shifted to the appellees to present evidence rebutting that presumption. Appellees presented evidence in the form of affidavits that not only refuted any benefit but also asserted—were the trial court to determine they received a benefit—the amount of the benefit to be allocated to each appellee. Weighing the evidence presented by appellees involved the exercise of the trial court's discretion. That this fact-finding function was contemplated by the supreme court is clear from its discussions couching benefits and gifts in terms of questions of fact. *Id.* at 828-29 ("One who claims a gift has the burden to prove that such is the fact . . . . [W]hen a case involves facts suggesting that a nonsettling plaintiff may have benefited . . ., the nonsettling defendant must raise this allegation . . . ."). Thus, we will apply an abuse-of-discretion standard of review to the trial court's allocation of the settlement credit.

When reviewing matters committed to the trial court's discretion, we may not substitute our judgment for that of the trial court. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002). We may reverse a trial court under this standard only when we find that "the court acted in an unreasonable or arbitrary manner," *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991), or "without regard for any guiding rules or principles." *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998) (quoting *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 754 (Tex. 1995)). The trial court does not abuse its discretion if some evidence

7

reasonably supports its decision. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2002) (citing *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978)).

At the outset, we reject Dr. Utts's contention that we should look to the settlement credit allocation procedure set forth in *Drilex* for guidance. *See* 1 S.W.3d at 123-24 (allocating settlement credit by percentage of total jury award). Although the justices' various opinions in *Utts I* expressed three different views about the applicability of *Drilex*'s settlement credit analysis, a majority of the court held that "we do not apply *Drilex* to determine which settlement amounts Dr. Utts may credit against the Short family members' recoveries." *Utts I*, 81 S.W.3d at 827.

Dr. Utts next contends that because the trial court implicitly sustained his objections to appellees' affidavits, appellees failed to meet their burden to show that they each benefited equally from the Walker settlement. We disagree. At the hearing on the motion for judgment, counsel for Dr. Utts objected to appellees' affidavits on several grounds, including an objection that the affidavits were inadequate for an evidentiary hearing. The trial court invited a response to the objections from appellees' counsel. After that discussion, the parties presented arguments about how to allocate the settlement credit. The trial court then announced its ruling on the motion. Nowhere in the record did the trial court rule on Dr. Utts's objections, nor did Dr. Utts attempt to secure an explicit ruling. Dr. Utts asserts that the trial court's determination of entitlement to the full $190,000 settlement credit constitutes an implicit ruling excluding the evidence. To the contrary, the judgment reflects that the trial court considered appellees' affidavits: "Said sums represent the amount of the verdict, less proper deductions for settlement credits from each Plaintiff's recovery reflecting the benefit he or she received from any settlement *as dictated by the evidence presented by each Plaintiff*

8

showing why they did or did not benefit from any settlement." (Emphasis added.) We now turn to an examination of whether the trial court's allocation of the settlement credit constituted an abuse of discretion.

Appellees' motion for judgment, supported by their uncontroverted affidavits, sets forth three options for allocating the benefit that appellees received from the settlement credit. The first option allocated no settlement credit, based on the assumption that appellees received no benefit. The second option allocated a $150,000 settlement credit, based on the assumption that appellees each received a $25,000 benefit for the payment of their attorney's expenses. The third option allocated an additional $40,000 settlement credit, based on the assumption that each individual appellee benefited from the $10,000 gift from Walker. The trial court, presented with the choice of allocating no benefit, a $150,000 benefit, or the full $190,000 benefit, determined that appellees together benefited from the full $190,000. The trial court then allocated, according to each appellee's individual benefit, $25,000 to each appellee for expenses paid and $10,000 to each appellee who had received a payment from Walker.

We find the trial court's choice to be reasonable given the standard set forth in *Utts I* and the evidence adduced at the hearing on the motion for judgment. As directed by the supreme court, the trial court credited each appellee "with the amount reflecting the *benefit* he or she received from the settlement proceeds." *Utts I*, 81 S.W.3d at 830 (citing *Ellender*, 968 S.W.2d at 927) (emphasis added). This language demonstrates that the terms credit and benefit are not synonymous: the supreme court envisioned separate determinations of entitlement to a settlement credit and the resulting benefit to each appellee. Furthermore, on remanding the case, *Utts I* directed appellees to

9

present evidence of the benefit they received but made no statement about the form that evidence must take. *Id.*

The trial court does not abuse its discretion if some evidence reasonably supports its decision. *Butnaru*, 84 S.W.3d at 211 (citing *Davis*, 571 S.W.2d at 862). That the trial court chose among the options supported by appellees' affidavits does not constitute an abuse of discretion. Accordingly, we do not find that the trial court abused its discretion in its allocation of the settlement credit among the appellees. We overrule Dr. Utts's first issue.

### *Prejudgment and Postjudgment Interest*

In his second issue, Dr. Utts contends that we should reform the trial court's judgment to reflect the postjudgment interest rates as amended in the 2003 legislative session, to wit a minimum of five percent, instead of the former minimum of ten percent.[6] Because prejudgment interest in a wrongful death case is awarded at the same rate as postjudgment interest, Dr. Utts also asks that we modify the prejudgment interest rate. *See* Tex. Fin. Code Ann. § 304.103 (West Supp. 2004).

Identical amendments to section 304.003(c) of the finance code went into effect on June 20, 2003, through House Bill 2415, and September 1, 2003, through House Bill 4. Both acts state that the amendments apply "in any case in which a final judgment *is signed or subject to appeal*

---

[6] *See* Act of June 2, 2003, 78th Leg., R.S., ch. 676, § 1, 2003 Tex. Gen. Laws 2096, 2097 (effective June 20, 2003) (codified at Tex. Fin. Code Ann. § 304.003(c) (West Supp. 2004)) [hereinafter "House Bill 2415"]; Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 6.01, 2003 Tex. Gen. Laws 847, 862 (effective Sept. 1, 2003) (codified at Tex. Fin. Code Ann. § 304.003(c) (West Supp. 2004)) [hereinafter "House Bill 4"].

on or after the effective date of this Act."[7]  (Emphasis added.)  Dr. Utts urges that because the trial court signed the final judgment on May 6, 2003 and Dr. Utts filed his notice of appeal on July 31, 2003, this case was "subject to appeal" after the effective dates of the amendments.  Appellees counter that because the bill analyses explain that these amendments are to apply prospectively,[8] after the final judgment was signed in this case, the amendments do not apply here.

In our analysis of this issue, we adhere to the well-settled principles of statutory construction.  A court will apply the plain and common meaning of a statute and may not by implication enlarge the meaning of any word in the statute beyond its ordinary meaning, especially when the court can discern the legislative intent from a reasonable interpretation of the statute as it is written.  *Sorokolit v. Rhodes*, 889 S.W.2d 239, 241 (Tex. 1994).  Courts should be careful not to give one provision a meaning out of harmony or inconsistent with other provisions, although it might be susceptible to such a construction standing alone.  *Texas Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002) (citing *Barr v. Bernhard*, 562 S.W.2d 844, 849 (Tex. 1978)).  To be sure, a court must presume that the legislature intends an entire statute to be effective and that a just and reasonable result is intended.  Tex. Gov't Code Ann. § 311.021(2), (3) (West 1998).  Thus, even when a statute is not ambiguous on its face, a court may consider numerous factors to determine the

---

[7] *See* Act of June 2, 2003, 78th Leg., R.S., ch. 676, § 2(a), 2003 Tex. Gen. Laws 2096, 2097 (effective June 20, 2003) (codified at Tex. Fin. Code Ann. § 304.003(c) (West Supp. 2004)); Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 6.04, 2003 Tex. Gen. Laws 847, 862 (effective Sept. 1, 2003) (codified at Tex. Fin. Code Ann. § 304.003(c) (West Supp. 2004)).

[8] *See* Senate Comm. on Jurisprudence, Bill Analysis, Tex. H.B. 2415, § 2(a), 78th Leg., R.S. (2003) (stating that the "signed or subject to appeal" section "[m]akes application of this Act prospective"); Senate Comm. on State Affairs, Bill Analysis, Tex. H.B. 4, art. 6, § 6.04, 78th Leg., R.S. (2003) (stating that the "signed or subject to appeal" section "[m]akes application of the changes in law made by this article prospective").

11

legislature's intent, including the legislative history and the consequences of a particular construction. *Id.* § 311.023 (West 1998); *Ken Petroleum Corp. v. Questor Drilling Corp.*, 24 S.W.3d 344, 350 (Tex. 2000).

Our sister courts in Fort Worth and Dallas have addressed this issue. In *Columbia Medical Center of Las Colinas v. Bush*, the appellant contended that because its appeal was pending when the amendments became effective, the new postjudgment interest rate should apply. 122 S.W.3d 835, 864 (Tex. App.—Fort Worth 2003, pet. filed). The court determined that the plain meaning of "subject to appeal" when used to describe a judgment means "capable of being appealed" and in turn that the amendments apply only to cases in which a judgment is signed or becomes capable of being appealed after the effective date of the Act. *Id.* at 865. The court further considered the legislative history declaring that the amendments apply prospectively. *Id.* at 866. For those reasons, the court held that the "subject to appeal" language did not apply to cases pending on appeal as of June 20, 2003. *Id.*

In *Cigna Healthcare of Texas, Inc. v. Pybas*, issued three weeks before the oral argument of the instant case, our sister court in Dallas considered a similar argument in which it construed the effective date of the amendments to be September 1, 2003. No. 05-03-00517-CV, 2004 Tex. App. LEXIS 1412, at *51 (Tex. App.—Dallas Feb. 12, 2004), *judgm't vacated and case dismissed pursuant to settlement by* 2004 Tex. App. LEXIS 2666 (Tex. App.—Dallas Mar. 25, 2004). Following the holding in *Bush*, the court held that "because the judgment in this case was both signed and subject to appeal before September 1, 2003, the amended statute setting post-judgment interest rates does not apply." *Id.* at *53.

12

We agree with the interpretations in *Bush* and *Pybas*. Here, the trial court signed the final judgment on May 6, 2003. The amendments to section 304.003(c) of the finance code apply "in any case in which a final judgment is signed or subject to appeal on or after the effective date of this Act," which at the earliest was June 20, 2003 under House Bill 2415.[9] Clearly, the final judgment was signed before the effective date of the act. Furthermore, because the trial court rendered a final judgment that disposed of all claims and all parties, this case also was subject to appeal as of the date of the judgment, more than a month before the effective date of the act. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001) ("[T]he general rule, with a few mostly statutory exceptions, is that an appeal may be taken only from a final judgment. A judgment is final for purposes of appeal if it disposes of all pending parties and claims in the record.") (internal citations omitted).

The legislative history expressly states that the amendments apply prospectively. *See* Senate Comm. on Jurisprudence, Bill Analysis, Tex. H.B. 2415, § 2(a), 78th Leg., R.S. (2003) (the "signed or subject to appeal" section "[m]akes application of this Act prospective"). "Prospective" means "concerned with or relating to the future; effective in the future." *Webster's Third New International Dictionary* 1821 (1986). Were we to construe the amendments to apply to cases already subject to appeal before the effective date of the act, we would render the prospective language meaningless. Because the judgment in this case was signed and subject to appeal before June 20, 2003, and because the legislative history expressly states that the amendments apply

---

[9] *See* Act of June 2, 2003, 78th Leg., R.S., ch. 676, § 2(a), 2003 Tex. Gen. Laws 2096, 2097 (effective June 20, 2003) (codified at Tex. Fin. Code Ann. § 304.003(c) (West Supp. 2004)).

prospectively, the amended prejudgment and postjudgment interest rates do not apply. We overrule appellant's second issue. Having overruled both of appellant's issues, we affirm the judgment of the trial court in all respects.

## CONCLUSION

As directed by the supreme court, the trial court credited each appellee "with the amount reflecting the benefit he or she received from the settlement proceeds." *Utts I*, 81 S.W.3d at 830 (citing *Ellender*, 968 S.W.2d at 927). We find the trial court's choice of allocating the settlement credit to be reasonable given the standard set forth in *Utts I* and the evidence adduced at the hearing on the motion for judgment. Accordingly, we do not find that the trial court abused its discretion in its allocation of the settlement credit among the appellees. Furthermore, because the final judgment in this case was signed and subject to appeal before the 2003 amendments to section 304.003(c) of the finance code went into effect, we decline to reform the trial court's judgment to reflect the new prejudgment and postjudgment interest rates. Having overruled both of appellant's issues, we affirm the judgment of the trial court in all respects.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: April 1, 2004

14