ACCEPTED
01-15-00453-cv
FIRST COURT OF APPEALS
HOUSTON, TEXAS
10/29/2015 5:16:11 PM
CHRISTOPHER PRINE
CLERK

NO. 01-15-00453-CV

In The

FIRST COURT OF APPEALS

At Houston, Texas

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
10/29/2015 5:16:11 PM
CHRISTOPHER A. PRINE
Clerk

_____

**THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,**

Appellant,

**V.**

**KEVIN ROBERTS, et al,**

Appellees.

_____

Appealed from the 165th District Court of
Harris County, Texas

_____

**APPELLANT'S REPLY BRIEF**

_____

Loren R. Smith
State Bar No. 18643800
Kelly & Smith, P.C.
4305 Yoakum Blvd.
Houston, Texas 77006
Tel.: (713) 861-9900
Fax: (713) 861-7100

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

TABLE OF CONTENTS ...........................................................................................................ii

INDEX OF AUTHORITIES ................................................................................................iii

ISSUES PRESENTED FOR REVIEW ..............................................................................vi

REPLY TO STATEMENT OF FACTS ............................................................................. 1

SUMMARY OF THE ARGUMENT .................................................................................. 1

ARGUMENT........................................................................................................................3

ISSUE 1:  . ........................................................................................................................... 3

    The trial court erred in holding that ICSP's worker's compensation subrogation claims were waived, as the waiver of subrogation provisions only apply to liabilities assumed by Savage.  As Savage was not obligated to indemnify Exxon for this accident, the waiver does not apply

ISSUE 3:  .......................................................................................................................... 19

    Exxon's affidavit of T. Lynn Henagan cannot be any basis for affirming the trial court's summary judgment

PRAYER FOR RELIEF ...................................................................................................... 19

CERTIFICATE OF SERVICE ........................................................................................... 20

CERTIFICATE OF COMPLIANCE AND WORD COUNT ............................................ 21

# INDEX OF AUTHORITIES

**Cases**

*American General Fire & Casualty Co. v. McDonald*, 796 S.W.2d 201, 204 (Tex.App.--San Antonio 1990, writ den'd) .................................................... 5

*Argonaut Insurance Company v. Baker,* 87 S.W.3d 526, 530 (Tex. 2002)...................... 4, 5

*Capitol Aggregates, Inc. v. Great American Ins. Co.*, 408 S.W.2d 922, 923 (Tex.1966)…………………………………………………….................4, 5, 7

*Employers Cas. Co. v. Henager*, 852 S.W.2d 655, 659 (Tex.App.--Dallas 1993, writ den'd)............................................................................................................. 6

*Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.,* 256 S.W.3d 660 (Tex. 2008).......... 9

*Fort Worth Lloyds v. Haygood*, 246 S.W.2d 865, 869 (Tex. 1952) .................................... 4

*Home Indemnity Co. v. Pate*, 814 S.W.2d 497, 499-500 (Tex.App.-Houston [1st Dist.] 1991, no writ); .................................................................. 6, 7

*In re Horizon*, 2015 Tex. LEXIS 141, *2 (Tex. 2015) (emphasis added) ............................ ..................................................................................... 2, 8, 10, 11, 12, 13, 18

*Insurance Co. of North America v. Wright*, 886 S.W.2d 337 (Tex.App.-- Houston[1st Dist.] 1994, writ den'd) .............................................................. 6

*Ken Petroleum Co., et al v. Questor Drilling Corp.*, *et al,* 24 S.W.3d 344, 355 (Tex. 2000)(emphasis added) ....................................... 2, 12, 13, 14, 15, 16, 17, 18

*Liberty Ins. Corp. v. SM Energy,* 2012 U.S. Dist. LEXIS 174069 (S.D. Tex. Dec. 7, 2012)................................................................. 19, 20

*Maintenance, Inc. v. ITT Hartford Group*, 895 S.W.2d 816 (Tex.App.- Texarkana 1995, writ denied) ...................................................................... 9

*McBroome-Bennett Plumbing, Inc. v. Villa France, Inc.*, 515 S.W.2d 32, 36 (Tex.Civ.App.--Dallas 1974, writ ref'd n.r.e.)(citing *Fares v. Cockrell*, 31 S.W. 190 (Tex. 1895) ....................................................................... 7

**Cases (cont.)**

*Pan American Ins. Co. v. Hi-Plains, Inc.*, 350 S.W.2d 644, 647 (Tex. 1961) ....................4

*Performance Ins. Co. v. Frans*, 902 S.W.2d 582, 585 (Tex.App.--
      Houston[1st Dist.] 1995, no writ) ................................................................................5

*Tesoro Petroleum Corp. v. Nabors Drilling United States*, 106 S.W.3d 118,
      133-134 (Tex. App.-Houston[1st Dist.] 2002, writ den'd) (emphasis added).................
      ......................................................................................................2, 12, 13, 14, 19

*Tex. Mut. Ins. Co. v. Ledbetter,* 251 S.W.3d 31, 33 (Tex. 2008)..........................................4

*Texas Workers' Compensation Insurance Fund v. Travis*, 912 S.W.2d
      895 (Tex.App.--Fort Worth 1995, no writ)...................................................................5

*Traders & General Ins. Co. v. West Texas Utilities Co.*, 165 S.W.2d 713, 716
      (Tex.Comm.App. 1942, op'n adopted)..........................................................................4

*Travelers Ins. Co. v. City of West Columbia*, 482 S.W.2d 53 (Tex.Civ.App.--
Houston[1st Dist.] 1972, writ ref'd n.r.e.).........................................................................6

*Travelers Ins. Co. v. Seidel*, 705 S.W.2d 278 (Tex.App.-San Antonio
      1986, writ dism'd) ................................................................................................5, 6, 7

**Statutes**

Chapter 417 of the Texas Labor Code.................................................................................3

NO. 01-15-00453-CV

THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA,

Appellant,

V.

KEVIN ROBERTS, et al,

Appellees.

_____

APPELLANT'S REPLY BRIEF
_____

TO THE HONORABLE COURT OF APPEALS OF THE FIRST SUPREME JUDICIAL DISTRICT:

Appellant, The Insurance Company of the State of Pennyslvania ("ICSP"), submits this reply brief in appeal of the lower court's order and judgment rendered in favor of Appellees, KEVIN ROBERTS ("Roberts") and EXXON MOBIL CORPORATION ("Exxon"). This appeal is from the 165th District Court of Harris County, Texas, Cause No. 2013-03033, Hon. Jeff Shadwick presiding, in which Roberts was the Plaintiff, Exxon was the Defendant and Third-Party Plaintiff, and ICSP was the Third-Party Defendant and Cross-Plaintiff.

# ISSUES PRESENTED FOR REVIEW

**ISSUE 1:**

The trial court erred in holding that ICSP's worker's compensation subrogation claims were waived, as the waiver of subrogation provisions only apply to liabilities assumed by Savage. As Savage was not obligated to indemnify Exxon for this accident, the waiver does not apply.

**ISSUE 2:**

Even if there is an enforceable waiver of subrogation in favor of Exxon, the trial court erred in holding that ICSP's right to assert that Roberts' and Munoz's third-party recovery constituted an advance against future benefits was also waived.

**ISSUE 3:**

Exxon's affidavit of T. Lynn Henagan cannot be any basis for affirming the trial court's summary judgment.

**REPLY TO STATEMENT OF FACTS**

Exxon does not dispute in its Statement of Facts, nor anywhere in its Brief, that it was solely responsible for the accident that seriously burned two of Savage's employees. Exxon does state in its Statement of Facts that it "wanted to make sure that the funds that it intended for the burn victims would not be diverted away from them and into the pockets of the insurance company. That was one reason for requiring the waiver of subrogation rights in the first place." This statement is completely outside of the record. Of course, Exxon's charity only goes so far. Exxon filed a cross-claim against Roberts in the case below seeking to recover indemnity for ICSP's claims. CR.52 Additionally, Exxon is currently involved in protracted litigation against Savage's liability carriers seeking reimbursement of 100% of the settlement amounts it paid to the Savage employees as well as its defense costs. CR.177.221 This is the subject of a separate state court lawsuit Exxon filed against the liability carriers, which is pending (currently in the United States District Court for the Southern District of Texas).

**SUMMARY OF THE ARGUMENT**

Exxon notes that ICSP charged Savage a premium for the waiver endorsement, and suggests that ICSP should provide the benefit of its bargain. However, Exxon seeks a waiver endorsement that is substantially broader than the one ICSP sold, which would waive subrogation against the world, without reference to an external contract requiring the waiver. Exxon's argument that *ATOFINA* applies ignores the fact that while the additional insured

1

endorsement in that case did not require reference to an external contract, the waiver endorsement in this case clearly does.

Exxon argues in the alternative that even if the service contract is to be referenced to determine whether the waiver endorsement applies, the limitation of the waiver to liabilities assumed by Savage includes any contractual "responsibility", including the contractual responsibility for Savage to secure worker's compensation coverage in favor of its employees. This incredible argument, if valid, would gut the holdings of the Texas Supreme Court in *Ken Petroleum* and *Deepwater Horizon*, and this Court in *Tesoro Petroleum*, which cases held the term "assumed liabilities" to be synonymous with the indemnity obligation.

Exxon attempts to distinguish *Ken Petroleum* by claiming it did not involve a claim by an insurer against a party to a service contract. This argument is based upon an elementary misreading of the case, as it clearly does involve such a claim. *Ken Petroleum* involves a subrogation claim where the Underwriters' insured only had a $5,000 deductible interest, with the remainder of the claim being asserted by the Underwriters.

This Court should reverse the trial court's summary judgment, and remand the case to the trial court for a new trial on ICSP's claims.

ARGUMENT

**ISSUE 1: The trial court erred in holding that ICSP's worker's compensation subrogation claims were waived, as the waiver of subrogation provisions only apply to liabilities assumed by Savage. As Savage was not obligated to indemnify Exxon for this accident, the waiver does not apply.**

**ARGUMENT AND AUTHORITIES FOR ISSUE 1:**

ICSP does not dispute Exxon's opening salvo that this case is about the use of written contracts to manage business risks. Exxon drafted a "Standard Procurement Agreement" that did not have the "extraordinary shifting of risk" that its suppliers should indemnify Exxon for its own negligence which causes injury to the suppliers' employers. [1] Exxon can no doubt tout this fact as a selling point in negotiations with prospective suppliers. Applied to this accident, nowhere in the filings at the trial court or in its brief on appeal does Exxon dispute that Savage was not obligated to provide indemnity to Exxon for the claims asserted by Roberts and Munoz. Similarly, Exxon included in its Standard Procurement Agreement a limitation on the waiver of subrogation clause that provided it did not apply when the supplier was not required to indemnify Exxon. Exxon should keep its word, and honor its promise to limit waiver claims to instances when its suppliers are required to provide indemnity.

I.      **Basic Principles of Subrogation.**

Exxon outlines in its brief selected "principles of subrogation"; however, additional comment is warranted. The applicable statute, Chapter 417 of the Texas Labor Code, provides    the    worker's    compensation    carrier    a    very    strong    right    of

_____

[1] "Because indemnification of a party for its own negligence is an extraordinary shifting of risk, this Court has developed fair notice requirements which apply to these types of

subrogation/reimbursement. As the Texas Supreme Court has noted: "For decades, Texas law has required the first money recovered by an injured worker from a tortfeasor to go to the worker's compensation carrier, and until the carrier 'is paid in full the employee or his representatives have no right to any funds.'" *Tex. Mut. Ins. Co. v. Ledbetter,* 251 S.W.3d 31, 33 (Tex. 2008)(*citing Argonaut Insurance Company v. Baker,* 87 S.W.3d 526, 530 (Tex. 2002); *see also Fort Worth Lloyds v. Haygood*, 246 S.W.2d 865, 869 (Tex. 1952)); *Traders & General Ins. Co. v. West Texas Utilities Co.*, 165 S.W.2d 713, 716 (Tex.Comm.App. 1942, op'n adopted); *Pan American Ins. Co. v. Hi-Plains, Inc.*, 350 S.W.2d 644, 647 (Tex. 1961); *Capitol Aggregates, Inc. v. Great American Ins. Co.*, 408 S.W.2d 922, 923 (Tex. 1966); *Travelers Ins. Co. v. Seidel*, 705 S.W.2d 278 (Tex.App.-San Antonio 1986, writ dism'd); *Performance Ins. Co. v. Frans*, 902 S.W.2d 582, 585 (Tex.App.--Houston[1st Dist.] 1995, no writ); *Texas Workers' Compensation Insurance Fund v. Travis*, 912 S.W.2d 895 (Tex.App.--Fort Worth 1995, no writ). "The law governing this settlement is simple: the compensation carrier gets the first money a worker receives from a tortfeasor. First-money reimbursement is crucial to the worker's compensation system because it reduces costs for carriers (and thus employers, and thus the public) and prevents double recovery by workers." *Ledbetter,* 251 S.W.3d at 35. A worker's compensation carrier's right to reduce its liability through payment by a third person "must not be compromised." *American General Fire & Casualty Co. v. McDonald*, 796 S.W.2d 201, 204 (Tex.App.--San Antonio 1990, writ den'd); *Employers Cas. Co. v. Henager*, 852 S.W.2d 655, 659 (Tex.App.--Dallas 1993, writ den'd). An agreement

agreements." *Dresser v. Page Petroleum,* 853 S.W.2d 505, 508 (Tex. 1993).

4

between an injured employee and a liable third party which attempts to circumvent a worker's compensation carrier's subrogation interest is ineffective to defeat the carrier's rights. *See Ledbetter; Henager*; *Frans; McDonald*; *Travis; Insurance Co. of North America v. Wright*, 886 S.W.2d 337 (Tex.App.--Houston[1st Dist.] 1994, writ den'd); *Travelers Ins. Co. v. City of West Columbia*, 482 S.W.2d 53 (Tex.Civ.App.--Houston[1st Dist.] 1972, writ ref'd n.r.e.). When a third party pays a settlement or judgment to an employee, and the employee fails to reimburse the carrier, the third party and the employee "are jointly and severally liable to the compensation carrier for its entire subrogation claim." *Frans*, 902 S.W.2d at 585; *Seidel*, 705 S.W.2d at 281. "When an injured worker settles a case without reimbursing a compensation carrier, everyone involved is liable to the carrier for conversion- the plaintiffs, the plaintiffs' attorney, and the defendants." *Ledbetter,* 251 S.W.3d at 38. A carrier is not even required to intervene into the employee's lawsuit to be entitled to reimbursement. *Home Indemnity Co. v. Pate*, 814 S.W.2d 497, 499-500 (Tex.App.-Houston [1st Dist.] 1991, no writ); *Seidel*, 705 S.W.2d at 281.

The public policy behind the enactment of the statute was to preclude employees from being overcompensated, and to keep employer's insurance rates lower. "Section 6a was adopted to prevent overcompensation to the employee and to reduce the burden of insurance to the employer and to the public." *Capitol Aggregates, Inc.*, 408 S.W.2d at 924. The public policy in favor of subrogation has been strongly supported by Texas courts. "Texas courts have always been particularly hospitable to the right of subrogation and have been in the forefront of upholding it." *McBroome-Bennett Plumbing, Inc. v. Villa France, Inc.*, 515

S.W.2d 32, 36 (Tex.Civ.App.--Dallas 1974, writ ref'd n.r.e.)(citing *Fares v. Cockrell*, 31 S.W. 190 (Tex. 1895); "Perhaps the courts of no state have gone further in applying the doctrine of subrogation than has the court of this state").

Exxon argues that "a waiver makes the tort case cheaper to resolve." Exxon cites no evidence or studies in support of this proposition. Logically, it shouldn't, when the employee brings the tort case. Exxon was not entitled to an offset against Roberts and Munoz for the amount of benefits paid by ICSP.[2] Exxon was still liable to Roberts and Munoz for the full amount of their damages, irrespective of a waiver. As such, in the instance where the injured employee brings an injury claim against a third party, as opposed to the instance when the carrier brings the subrogation claim on its own, the liable third party is liable for the same amount of damages irrespective of the waiver. In that instance, all the waiver accomplishes is to provide the injured worker a double recovery. Not surprisingly, contracting parties have been careful to limit waivers of subrogation to avoid unintended windfalls to employees.

Exxon argues that the "insurance company (here ICSP) can charge more to waive its subrogation rates. . . ." However, Exxon also argues for ICSP to provide a broader waiver than what Savage paid for; in particular, a waiver that waives subrogation against the world without necessity of a written contract with the employer requiring a waiver. If the Texas Department of Insurance approved such an endorsement and ICSP provided it, it would no doubt cost substantially more than the modest premium ICSP charged Savage under this

---

[2] The fact that Exxon did not offset for worker's compensation benefits in its settlement with Roberts is apparent from Roberts' agreement to indemnify Exxon for any claims by ICSP as part of his settlement with Exxon. CR.53

policy.3 Such a global endorsement would probably be a poor seller, as employers typically want their insurers to pursue subrogation to assist them in lowering their experience rating, and correspondingly their worker's compensation rates.4 This is especially true if the employer has an optional deductible insurance policy which stands to be reimbursed out of a subrogation recovery.5 As such, the restriction on the endorsement limiting it to instances where the employer agreed by written contract to furnish the endorsement benefits the employer, by not providing a double recovery to employees who pursue third party claims against tortfeasors with whom their employer did not have an agreement to waive subrogation.

## II.     The Policy does not waive ICSP's Right of Subrogation.

### A.     The path under *Evanston v. ATOFINA* is closed.

Exxon notes that the title of the endorsement is "TEXAS WAIVER OF OUR RIGHT TO RECOVER FROM OTHERS ENDORSEMENT", and then proceeds to argue that it waives subrogation against the world. In particular, Exxon argues that *Evanston Ins. Co. v. ATOFINA Petrochemicals, Inc.,* 256 S.W.3d 660 (Tex. 2008*)* applies, and no reference is necessary to any external contract. As such, if an external contract is not to be referenced in determining who is a beneficiary of the waiver, then the entire world is a beneficiary. Quite

---

3 "By tying additional-insured coverage to the terms of an underlying agreement, the parties procure only the coverage the insured is contractually obligated to provide, thereby minimizing the insurer's exposure under the policy and the named insured's premiums." *In re Deepwater Horizon*, 2015 Tex. LEXIS 141, *18, 58 Tex. Sup. J. 330, 2015 AMC 1491 (Tex. 2015).
4 *See Maintenance, Inc. v. ITT Hartford Group*, 895 S.W.2d 816 (Tex.App.-Texarkana 1995, writ denied).

simply, ICSP could not subrogate against anyone for any worker's compensation benefits it paid to Savage employees.

Exxon's argument that *ATOFINA* applies to this case is akin to an argument that the sun rises in the west. Exxon outlines three elements required for the endorsement to apply, including the third element, that "Savage is 'required by a written contract to obtain the waiver' from ICSP." Exxon then vacillates and concludes: "The analysis can stop there, and the summary judgment can be affirmed, without any need to go through the language of the underlying service contract between ExxonMobil and Savage." This begs the question – how can the third element of the endorsement, whether Savage is required by a written contract to obtain the waiver from ICSP, be determined without going through the language of the underlying service contract between ExxonMobil and Savage?

As held by the Texas Supreme Court in *In re Deepwater Horizon,* 2015 Tex. LEXIS 141 (Tex. 2015), the analysis from *ATOFINA* does not apply when the endorsement requires reference to a contract outside of the four corners of the insurance policy.[6] In this case, the waiver endorsement clearly states in two places that it only applies when the insured is required by a written contract to secure the waiver. If the waiver endorsement only required the first two elements, i.e. (1) the underlying claims must be for bodily injury and (2) arise from operations,

---

[5] *See Argonaut Ins. Co. v. Baker,* 87 S.W.3d 526 (Tex. 2002).
[6] "*ATOFINA,* on the other hand, recognizes that a named insured may gratuitously choose to secure more coverage for an additional insured than it is contractually required to provide. This occurs when the language of an insurance policy does not link coverage to the terms of an agreement to provide additional-insured coverage. In that event, only coverage restrictions embodied in the policy will be given effect." *In re Horizon,* 2015 Tex. LEXIS 141, *18, 58 Tex. Sup. J. 330, 2015 AMC 1491 (Tex. 2015).

without reference to an external contract requiring the waiver, then Exxon would be correct that *ATOFINA* applies and there is a waiver irrespective of the "liabilities assumed" limitation of the Exxon / Savage contract. It does not, and Exxon's path under *ATOFINA* to its affirmative defense of waiver is closed.

**B.      The path under *Urrutia v. Decker*: There is no written contract requiring Savage to waive subrogation; so this path to a waiver is also closed.**

The "*Urrutia* path" is the same path as *Deepwater Horizon*, as both cases involved endorsements that incorporated an insured's contract. This is the correct path to explore in this case, but it nonetheless does not end with the finding of a waiver.

Exxon first points out the unremarkable fact that the Court in *Urrutia v. Decker,* 992 S.W.2d 440 (Tex. 1999) examined the "extent" of coverage under the endorsement. This is because the endorsement provided additional insured coverage for: "C.  Both lessees and rentees of covered autos as insureds, but only to the extent and for the limits of liability agreed to under contractual agreement with the named insured." *Urrutia,* 992 S.W.2d at 441. The blanket waiver of subrogation endorsement does not use the word "extent"; nonetheless, it only provides for a waiver of subrogation to the extent that the employer has a written contract requiring it to obtain the waiver. Exxon argues: "The ICSP policy is different. It does not include any language expressly limiting the extent of coverage provided under the subrogation waiver endorsement to conform to the indemnity provisions of the service contract." To the contrary, the endorsement limits the waiver to the extent that Savage entered into a written contract requiring it to obtain the waiver, and the Exxon / Savage contract limited the waiver

9

obligation "to the extent liabilities are assumed"; i.e. to the extent that Savage agreed to indemnify Exxon.

Exxon then mentions on the contract's use of plural term "liabilities." Exxon does not identify the significance of the use of the term "liabilities assumed" as opposed to "liability assumed." Exxon argues that ICSP attempts to rewrite the contract by substituting the term "liability for indemnity" for "liabilities." In fact, the relevant term with its adjective is "liabilities assumed." Notably, this term in its plural form has been interpreted to mean the contract's indemnity clause, not any and all "responsibilities" under a contract as Exxon would suggest.

> For **liabilities assumed** hereunder by contractor [Questor], its insurance shall be endorsed to provide that the underwriters waive their right of subrogation against Operator. Operator [Ken Petroleum] will, as well, cause its insurer to waive subrogation against Contractor for liability it assumes.

*Ken Petroleum Co., et al v. Questor Drilling Corp.*, *et al,* 24 S.W.3d 344, 355 (Tex. 2000)(emphasis added).

> (3) the only reasonable construction of the drilling contract's additional-insured provision is that BP's status as an additional insured is limited to the **liabilities Transocean assumed** in the drilling contract;

*In re Horizon*, 2015 Tex. LEXIS 141, *2 (Tex. 2015) (emphasis added).

> In this case, the indemnity agreement between Nabors and Tesoro plainly limits the parties' waiver of subrogation to the **liabilities each assumed** under the drilling contract.

*Tesoro Petroleum Corp. v. Nabors Drilling United States*, 106 S.W.3d 118, 133-134 (Tex. App.-Houston[1st Dist.] 2002, writ den'd)(emphasis added). Exxon's argument, if valid, would gut the holdings of these three cases, by effectuating the waiver endorsement or

additional insured endorsement by the mere fact the insured agreed to secure an insurance policy covering its own interests. In *Ken Petroleum*, Questor would have benefitted from the waiver of subrogation because Ken Petroleum agreed to secure its own insurance coverage. In *Deepwater Horizon*, BP would have been an additional insured for subsurface pollution from the massive oil spill of April 2010 because Transocean agreed to secure its own insurance coverage. In *Tesoro Petroleum*, Tesoro would have received a waiver of subrogation for its own gross negligence because Nabors agreed to secure its own insurance coverage.7 Clearly, the Texas Supreme Court and this Court in those cases did not feel it was rewriting the contract by interpreting "assumed liabilities" to be synonymous with the indemnity obligation, and only the indemnity obligation. Notably, this Court in *Tesoro* interpreted *Ken Petroleum* to limit a waiver of subrogation based upon the indemnity clause:

"A liability insurer for an oil well driller or operator does not waive its right to subrogation to its insured's claims against the other party for matters beyond the scope of the indemnity agreement between the parties." *Tesoro*, 106 S.W.3d at 133 (*citing Ken Petroleum*, 24 S.W.3d at 355).

---

7 An illustration of the reason for the use of the plural term "liabilities" can be gleaned from *Tesoro*; namely, it is the agreement to provide indemnity for one or more causes of action. Nabors assumed liability for damages caused by Tesoro's negligence, but did not assume liability for damages caused by Tesoro's gross negligence. "In this case, the indemnity agreement between Nabors and Tesoro plainly limits the parties' waiver of subrogation to the liabilities each assumed under the drilling contract. Nabors did not assume liability for losses to its rig caused by Tesoro's gross negligence." *Id*, at 133. "Liabilities" could also describe liability to multiple parties; in this case, Exxon was liable to both Roberts and Munoz for their injuries.

Finally, Exxon misconstrues the obligation to secure a waiver of subrogation as being "triggered in the contract by a determination of which party – ExxonMobil or Savage – agreed to assume the obligation to provide workers compensation insurance coverage for Savage's employees working at the Baytown refinery." Exxon references the exception, not the general rule: "[Savage] and its insurer(s) providing coverage in this Section shall waive all rights of subrogation and/or contribution against [Exxon] and its Affiliates to the extent liabilities are assumed by [Savage], **except [Savage] expressly agrees not to cause itself or its insurer(s) to waive any rights of subrogation and/or contribution against [Exxon] and its Affiliates under any workers' compensation and employers' liability insurance, or similar social insurance in accordance with law which may be applicable to those employees of [Savage], when [Exxon] elects to furnish or arrange same."** (emphasis added). The general rule is that Savage only agrees to secure a waiver of subrogation to the extent it assumes liabilities. However, even if it assumes liabilities, there is an *exception* to the waiver obligation if Exxon furnishes the worker's compensation coverage. Nonetheless, if Savage does not agree to assume Exxon's liabilities, the exception is moot.

### C. Exxon's reading of the policy endorsement is not reasonable.

Exxon argues: "As a fallback, ExxonMobil has at least a reasonable reading of the policy. ExxonMobil reads the policy as prior courts read it in *Chevron, Buckland* and *Liberty* cases, which examined the same endorsement." First, none of these cases interpreted the endorsement as Exxon would, that the service contract does not need to be referenced to determine if the waiver applies. This is not a reasonable reading, as the endorsement plainly

12

requires reference to a written contract to determine its applicability. Additionally, the rule would not extend to the interpretation of the meaning of "assumed liabilities", as that term was drafted by Exxon in its own service contract, not ICSP.

**D.     Exxon fails to distinguish the precedent from the Texas Supreme Court and this Court.**

Exxon attempts to distinguish the precedent from the Texas Supreme Court and this Court cited by ICSP regarding the interpretation of the scope of the term "liabilities assumed" in the context of an insurance endorsement. Exxon fails to distinguish these cases, as ICSP will demonstrate.

**1.     *Ken Petroleum*.**

Exxon begins by arguing: "As the name of that case indicates, neither side was an insurance company, so it will not take long to see that *Ken Petroleum* is irrelevant." Exxon only attempts to make one distinction to the case: "There is one significant difference in the facts of Ken Petroleum that distinguishes it from the present case. The claims were between the two parties to the underlying service contract – Ken Petroleum and Questor – not between a party to the contract and the insurer."

Exxon is mistaken, and embarrassingly so. The full style of the case is "Ken Petroleum Corporation **and Certain Member Companies at the Institute of London Underwriters, et al.**, Petitioners v. Questor Drilling Corporation and Philbro Energy USA, Inc., Respondents – consolidated with Weber Energy Corporation, Petition v. Grey Wolf Drilling Company, Respondent." (emphasis added). In the opinion, the Court noted:

Ken Petroleum's share of the settlement was $500,000. It paid $5,000 (its insurance deductible), and the balance was paid by its insurance underwriters. The Underwriters and Ken Petroleum then brought a new suit against Questor and Phibro for $500,000 plus $160,000 in defense costs, alleging breach of the indemnity agreement, breach of guaranty based on the certificate of insurance, and DTAP violations.

*Ken Petroleum*, 24 S.W.3d at 347-48. The Underwriters' subrogation claims against Questor were for $660,000, of which only $5,000 was paid by Ken Petroleum. This is noted later in the opinion:

Questor's and Phibro's motion for summary judgment also dealt with the rights and obligations of **Ken Petroleum's insurance underwriters. As indicated earlier in this opinion, the Underwriters funded $ 495,000 of a $ 500,000 settlement payment on behalf of Ken Petroleum** to the family of Questor's employee who was killed on the Duson # 1 drilling job.

Questor contends that as the subrogees of Ken Petroleum, the Underwriters expressly waived their right to sue it to enforce the indemnity agreement. First, Questor argues that the following provision in the drilling contract precludes the Underwriters from enforcing Questor's indemnity agreement:

13. Insurance: . . . For liabilities assumed hereunder by contractor [Questor], its insurance shall be endorsed to provide that the underwriters waive their right of subrogation against Operator. Operator [Ken Petroleum] will, as well, cause its insurer to waive subrogation against Contractor for liability it assumes.

Questor's contentions are not well-founded. Ken Petroleum agreed to cause its underwriters to waive their subrogation rights only as to amounts Ken Petroleum might have to pay under its agreement to indemnify Questor. Ken Petroleum did not agree to indemnify Questor for injuries to or the death of Questor's employees. To the contrary, Questor agreed that it would indemnify Ken Petroleum if a Questor employee were injured or killed. The foregoing provision did not waive the rights of the Underwriters to enforce, as subrogees, the indemnity obligations Questor owed to Ken Petroleum.

*Id*, at 355. Contrary to Exxon's alleged distinction, the claims were between a party to the contract (Questor) and the insurer (the Underwriters).

Exxon argues: "Accordingly, the court was not called on to determine whether the policy incorporated any limits or exclusions from the contract." This is incorrect, as the endorsement in the Underwriters' policy was entitled "WAIVER OF SUBROGATION WHEN REQUIRED BY CONTRACT." *Id.,* at 355. The Court then referenced the contract between Ken Petroleum and Questor to determine that the endorsement was not triggered:

> Questor is not a party to the contract of insurance between Ken Petroleum and its Underwriters. Questor must look to its own contract with Ken Petroleum to determine what subrogation rights it may insist that Ken Petroleum require its insurers to waive. Sections 13 and 14.9 of the drilling contract require Ken Petroleum to cause its insurers to waive their subrogation rights only with regard to Ken Petroleum's agreement to indemnify Questor for the death of or injury to Ken Petroleum employees and certain others. The drilling contract does not require Ken Petroleum to cause its insurers to waive subrogation rights when they pay amounts that Questor should have paid under its agreement to indemnify Ken Petroleum. If Ken Petroleum is not contractually obligated to Questor to enforce a waiver of subrogation, Questor cannot insist that Ken Petroleum assert a waiver of subrogation when Ken Petroleum and the Underwriters both agree that the Underwriters stepped into Ken Petroleum's shoes by paying $ 450,000 to settle the *Hemphill* litigation. Questor is not subject to conflicting claims from Ken Petroleum and its insurers. Questor owes indemnity obligations to Ken Petroleum, its subrogees, or both, if the indemnity agreement is enforceable under the TOAIA. There is no dispute between Ken Petroleum and the Underwriters about how they will divide the amounts owed by Questor under the indemnity agreement.

*Id.,* at 355-56. Finally, Exxon miscites the last sentence cited above in asserting that the Court "further noted that there was 'no dispute between' Ken Petroleum and its underwriters 'as to subrogation rights.'" What the last sentence states is that Ken Petroleum had no dispute as to how they will divide the recovery from Questor; at most $5,000 would go to Ken Petroleum for its deductible, and the rest to the Underwriters for its subrogation interest.

## 2.	*In re Deepwater Horizon.*

In attempting to distinguish *Deepwater Horizon*, Exxon argues: "The factors that drove the interpretation of the insurance policy in *Deepwater Horizon* are not present here." Exxon recognizes that as in *Deepwater Horizon*, ICSP's waiver endorsement references an external contract. However, Exxon submits "the phrase is not modifying the extent of coverage." This is a puzzling assertion, as the "coverage" provided by the ICSP endorsement is the agreement to waive subrogation. Without the trigger of an external contractual obligation to secure the endorsement, there is no "coverage" for the endorsement. Exxon suggests the "phrase modifies the word 'Schedule'" on the endorsement. Even if true, this is insignificant, as the Schedule also states the endorsement only applies to "[a]ny person or organization for whom the Named Insured has agreed by written contract to furnish this waiver." Exxon concludes: "Because Savage agreed to provide a waiver of subrogation in the service contract, ICSP has agreed to waive its subrogation rights." Therein lies the rub; Savage only agreed to provide a waiver of subrogation in the service contract for "liabilities assumed." Savage did not assume the liabilities for this accident; as such, there is no waiver.

## 3.	*Tesoro Petroleum Corp.*

Exxon attempts to distinguish this case from *Tesoro* because the insurance certificate "waived subrogation to Nabor's rights against Tesoro 'only as required by signed written contract and only insofar as liability is assumed by [Nabors] under signed written contract subject always to the policy's terms, conditions and exclusions.'" *Tesoro*, 106 S.W.3d at 122-23. The certificate's limitation to assumed liability was redundant since the incorporated

16

contract between Nabors and Tesoro also limited the waiver to assumed liabilities. "Each party agreed to maintain insurance for the liabilities it assumed under the drilling contract, in the same kind and amount as the other party, and to cause its insurer to waive subrogation to its rights against the other party for the liabilities contractually assumed." *Id.*, at 122. Exxon does not explain the significance of the alleged distinction, or why such a redundancy would be necessary in this case. It is not, as ICSP's waiver endorsement references the service contract, which service contract limits the waiver to assumed liabilities. This limitation need not be stated in both the policy endorsement and the service contract to be enforceable.

### 4.    *Liberty Ins. Corp.*

Exxon asserts that *Liberty Ins. Corp. v. SM Energy,* 2012 U.S. Dist. LEXIS 174069 (S.D. Tex. Dec. 7, 2012) did not involve the "question of whether contractual indemnification limitations are incorporated into an insurance policy." This is incorrect; the court found that liabilities were assumed under the indemnity agreement in that case, which triggered the endorsement. First, the court noted that the waiver endorsement applied to those "named in the Schedule", and that the "Schedule" states: "Where required by contract or written agreement prior to the loss." *Liberty Ins.,* at 12. The court then referenced the master service contract, which stated: "For each policy under which Contractor is an assured, whether or not required by this Contract, Contractor, as respects risk and liabilities assumed by Contractor, agrees to waive and agrees to have its insurers specifically waive any rights of subrogation they may have against St. Mary Group**. . . ." *Id.,* at 12. The court then addressed the indemnity clause, which it referred to as "broad." *Id.,* at 13-14. The cited language from the

17

indemnity clause complied with the express negligence doctrine and triggered the indemnity obligation, which was "expressly including any Claims Losses or Expense actually or allegedly resulting from the negligence or fault of St. Mary Group or any other person or entity." 8 *Id.,* at 14. Finally, the court observed: "The state-court suit is a claim against St. Mary 'arising out of or related to bodily injury or death' of Select's employees for 'medical, compensation or other benefits.' (Id., ¶ 11.2). Under the unambiguous language of the MSC, Select assumed St. Mary's liability in that suit." Based upon the contractual indemnity requirement, incorporated into the waiver requirement as assumed liability, the court found the waiver applied.

**E.     Miscellaneous**.

Exxon argues: "It is utterly irrelevant whether the indemnity clause is unenforceable." However, this Court did not view the issue of whether an indemnity clause was unenforceable in *Tesoro* in determining whether the waiver clause, which was limited to assumed liabilities, was triggered. *See Tesoro*, 106 S.W.3d at 128-32 ("In issues two and five, Zurich contends that the indemnity agreement in the drilling contract between Tesoro and Nabors is void and, therefore, the waiver of subrogation rights, which is specifically limited to those liabilities assumed by the contracting parties, is unenforceable.").

ICSP is not seeking a ruling on appeal that Roberts or Exxon converted ICSP's subrogation lien. This would be an issue to be addressed on remand. ICSP merely seeks reversal of the summary judgment granted in favor of Roberts and Exxon.

---

8 This contrasts with the language from Exxon's service contract, which does not require

**ISSUE 3: Exxon's affidavit of T. Lynn Henagan cannot be any basis for affirming the trial court's summary judgment.**

### ARGUMENT AND AUTHORITIES FOR ISSUE 3:

ICSP did not waive its objections to Exxon's affidavit of T. Lynn Henagan. ICSP objected to portions of Exxon's affidavit of T. Lynn Henagan (CR.79; Exhibit 8 (Appendix "I")) pursuant to Tex. Rule of Civ. Proc. 166a(f), and provided a proposed order supporting the objections. (CR.87-89) If the trial court's refusal to sign an order on the objections constituted waiver, it would place waiver under the control of the trial court, not the objecting party. ICSP has no ability to force the trial court to either sign its proposed order or revise its proposed order to denote the objections were denied.

Nonetheless, this issue is moot as Exxon has conceded on appeal that the affidavit testimony of Mr. Henagan was irrelevant, due to the parol evidence rule. As such, the affidavit cannot be any basis for affirming the trial court's summary judgment.

### PRAYER FOR RELIEF

WHEREFORE, ICSP prays that this Court reverse the trial court's summary judgment that ICSP take nothing as to its claims pertaining to Roberts, Munoz and Exxon, remand the case to the trial court for a new trial on ICSP's intervention interests; that ICSP recover its taxable costs of Court, and for such other and further relief as just.

---

Savage to indemnify Exxon for its responsibility in causing the accident.

Respectfully submitted,

KELLY & SMITH, P.C.

**/s/ *Loren R. Smith*_____**
Loren R. Smith
Texas Bar No. 18643800
4305 Yoakum Blvd.
Houston, Texas  77006
713/861-9900
713/861-7100 - FAX

ATTORNEYS FOR APPELLANT THE
INSURANCE COMPANY OF THE
STATE OF PENNSYLVANIA

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2015, a true and correct copy of the foregoing was forwarded by electronic transmission to the following counsel of record:

Jason A. Itkin
Arnold & Itkin
6009 Memorial Drive
Houston, Texas 77007
*Attorneys for Plaintiff Kevin Roberts*

Mike Morris
Tekell, Book, Allen & Morris, L.L.P.
1221 McKinney, Suite 4300
Houston, Texas 77010-2010
*Attorneys for Third-Party Plaintiff Exxon Mobil Corporation*

**/s/ *Loren R. Smith*_____**
Loren R. Smith

## CERTIFICATE OF COMPLIANCE AND WORD COUNT

I hereby certify that this document was produced on a computer using Microsoft Word and contains 5,807 words, as determined by the computer software's word-count function, excluding the sections of the document listed in Texas Rule of Appellate Procedure 9.4(i)(1).


*/s/ Loren R. Smith*_____

Loren R. Smith